OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Pursuant to the Martin Act (General Business Law article 23-A), the owner of an apartment building may sponsor an of
 
 *150
 
 fering plan to convert the building into a cooperative. Such conversions are subject to a complex statutory and regulatory scheme that governs the form and content of public offerings, public disclosure, advertising and criteria for determining when such a conversion becomes effective.
 
 [1]
 
 On this appeal, plaintiffs (the board of directors of the cooperative corporation and a number of individual shareholders and proprietary lessees) allege that the sponsor breached its contracts with them by retaining most of the shares in the cooperative after the effective date of the conversion. The central question before us is whether plaintiffs have sufficiently pleaded a cause of action for breach of contract. We conclude that they have. The complaint recites that in 1974, defendant Arthur Wiener acquired the subject 66-unit rent-regulated apartment building located at 511 West 232nd Street in The Bronx and transferred it to codefendant Jennifer Realty Co., a partnership in which Wiener and his named codefendants are principals. (We refer to defendants collectively as the sponsor.) Having obtained permission from the Attorney General in 1987 to convert to a cooperatively-owned building under a noneviction plan,
 
 [2]
 
 the sponsor began accepting offers for shares. After receiving offers for 15% of the shares (a prerequisite under the Martin Act for effectuating a noneviction conversion), the sponsor filed documentation with the Attorney General declaring the offering plan effective as of May 16, 1988
 
 (see
 
 General Business Law § 352-eeee [1] [b]; [2] [c] [i]; 13 NYCRR 18.3 [r] [1]). The sponsor then incorporated 511 West 232nd Owners Corp. (the Co-op Board), sold the building to the Co-op Board and acquired the as-yet unsold shares.
 

 It is undisputed that the sponsor has sold no shares since 1990. Instead, the sponsor has kept more than 62% of shares in the building, corresponding to 41 of the 66 apartments.
 
 *151
 
 Moreover, in 1996 the sponsor ceased updating its offering plan, causing it to lapse. As a result, the sponsor was prohibited from selling or marketing shares
 
 (see
 
 General Business Law § 352-e [2], [5]; 13 NYCRR 18.3 [r] [11]; [w] [11]). According to the complaint, in 1998 the tenant-owners learned that the sponsor had rejected bona fide purchase offers from prospective purchasers of vacant apartments.
 

 The tenant-owners and the Co-op Board brought this action against the sponsor, asserting that the sponsor had breached its contractual duty to dispose of all its shares within a reasonable time. The sponsor moved to dismiss, asserting a defense founded upon documentary evidence
 
 (see
 
 CPLR 3211 [a] [1]). In deciding the motion, Supreme Court dismissed the contract claim, finding that the offering plan contained no promise by the sponsor to sell unsold shares within any particular time frame. The Appellate Division reinstated the contract cause of action, holding that the sponsor’s offering plan included an implied promise to sell all unsold units within a reasonable time (285 AD2d 244 [2001]). The Appellate Division then granted the sponsor leave to appeal and certified the question, “Was the order of this Court, which modified the order of the Supreme Court, properly made?” (287 AD2d 947 [2001].)
 
 [3]
 

 We hold that plaintiffs have pleaded a cause of action for breach of contract sufficient to survive dismissal under CPLR 3211, and affirm the order of the Appellate Division. Our analysis, however, differs from the Appellate Division’s in that we address only the sufficiency of the contract cause of action as opposed to its merits.
 

 In the posture of defendants’ CPLR 3211 motion to dismiss, our task is to determine whether plaintiffs’ pleadings state a
 
 *152
 
 cause of action. The motion must be denied if from the pleadings’ four corners “factual allegations are discerned which taken together manifest any cause of action cognizable at law”
 
 (Polonetsky v Better Homes Depot,
 
 97 NY2d 46, 54 [2001], quoting
 
 Guggenheimer v Ginzburg,
 
 43 NY2d 268, 275 [1977]). In furtherance of this task, we liberally construe the complaint
 
 (see e.g. Leon v Martinez,
 
 84 NY2d 83, 87 [1994]; CPLR 3026), and accept as true the facts alleged in the complaint and any submissions in opposition to the dismissal motion
 
 (see Sokoloff v Harriman Estates Dev. Corp.,
 
 96 NY2d 409, 414 [2001] [collecting cases];
 
 Wieder v Skala,
 
 80 NY2d 628, 631 [1992]). We also accord plaintiffs the benefit of every possible favorable inference
 
 (see Sokoloff,
 
 96 NY2d at 414). Dismissal under CPLR 3211 (a) (1) is warranted “only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law”
 
 (Leon,
 
 84 NY2d at 88;
 
 see generally
 
 Siegel, NY Prac § 269, at 428 [3d ed]).
 

 Based on the foregoing principles, we conclude that plaintiffs’ complaint sufficiently alleged, at a minimum, that the sponsor undertook a duty in good faith to timely sell so many shares in the building as necessary to create a fully viable cooperative. The complaint asserts that the sponsor — by its initial offering plan and each of its 10 periodic amendments — offered for sale the shares in the cooperative corresponding to its 66 apartments, but instead retained a majority of those shares. The complaint narrates that the sponsor had represented that its expected profits would depend on market conditions and the length of time required to sell shares offered under the offering plan, but gave no hint that it would make a sizeable profit by retaining a majority of those shares and leasing apartments at market rates, free of the strictures of rent regulation. Similarly, the complaint states that the offering plan cautioned purchasers as to numerous investment risks, but did not mention the risk that the sponsor would keep most of the shares for itself. Based primarily on these allegations, plaintiffs assert that the parties could not have intended — and plaintiffs could not reasonably anticipate — that the sponsor would retain a majority of shares in the cooperative.
 

 Moreover, the complaint alleges that by keeping a majority of shares, the sponsor defeated the purpose of the contract. Plaintiffs assert that by rejecting offers from prospective buyers and allowing its offering plan to lapse, the sponsor frustrated plaintiffs’ ability to resell their shares, interfered with the Co-op Board’s refinancing of the building’s mortgage
 
 *153
 
 and caused shareholders’ maintenance payments to increase. The complaint elaborates on how the sponsor’s retention of a majority of shares discouraged private lenders from offering reasonable financing terms (insisting instead on higher interest rates and shorter maturity dates), and that these financing difficulties impaired the tenant-owners’ ability to resell their apartments at market rates. The complaint also claims that because most of the apartments are still rented rather than owner-occupied, many transient tenants live in the building, causing it increased wear and tear and thus forcing the Co-op Board to charge even higher monthly maintenance fees. Finally, the complaint avers that as former rent-regulated tenants, plaintiffs surrendered their rights pursuant to the Rent Stabilization Code by purchasing shares, but now pay more in monthly maintenance and cooperative loan payments than they had paid in rent as tenants. In sum, plaintiffs allege that the sponsor’s retention of shares so drastically undermined the contract that its fundamental objective — the creation of a viable cooperative — has been subverted.
 

 Because the sponsor’s documentary evidence does not clearly refute these assertions, and particularly in light of the sponsor’s duty imposed by the Attorney General not to abandon the offering plan after filing an effectiveness amendment
 
 (see
 
 13 NYCRR 18.3 [r] [11]), we conclude that defendants’ CPLR 3211 motion to dismiss must fail.
 

 In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance
 
 (see e.g. Smith v General Acc. Ins. Co.,
 
 91 NY2d 648, 652-653 [1998];
 
 Dalton v Educational Testing Serv.,
 
 87 NY2d 384, 389 [1995];
 
 Van Valkenburgh, Nooger & Neville v Hayden Publ. Co.,
 
 30 NY2d 34, 45,
 
 rearg denied
 
 30 NY2d 880,
 
 cert denied
 
 409 US 875 [1972]). This covenant embraces a pledge that “neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract”
 
 (Dalton,
 
 87 NY2d at 389, quoting
 
 Kirke La Shelle Co. v Armstrong Co.,
 
 263 NY 79, 87 [1933]). While the duties of good faith and fair dealing do not imply obligations “inconsistent with other terms of the contractual relationship”
 
 (Murphy v American Home Prods. Corp.,
 
 58 NY2d 293, 304 [1983]), they do encompass “any promises which a reasonable person in the position of the promisee would be justified in understanding were included”
 
 (Rowe v Great Atl. & Pac. Tea Co.,
 
 46 NY2d 62, 69 [1978], quoting 5 Williston, Contracts § 1293, at 3682 [rev ed 1937]). This is particularly true in cooperative conversions,
 
 *154
 
 whose sponsors must meet “high standards of fair dealing and good faith toward tenants” because “purchasing tenants and sponsors do not deal as equals either in terms of access to information or business acumen and thus, tenants often lack equal bargaining power” (Vermeer
 
 Owners v Guterman, 78
 
 NY2d 1114, 1116 [1991] [collecting cases]).
 

 By spelling out the basis for their claim that the sponsor failed to exercise good faith and deal fairly in fulfilling the terms and promises contemplated by the offering plan, plaintiffs pleaded a valid cause of action for breach of contract. Specifically, plaintiffs pleaded that they reasonably understood the offering plan to state a duty, at the very least, to sell a sufficient number of shares in a timely manner so as to create a viable cooperative. We emphasize, however, that we address only the sufficiency of the contract cause of action and not its merits. We note that the Appellate Division went so far as to hold that the sponsor had undertaken a duty to dispose of the units within a reasonable time. The Court thus decided that issue and left open only the question of whether the sponsor’s 10-year delay was reasonable. At this preanswer stage of the litigation, we need not reach the merits of plaintiffs’ contract cause of action and therefore do not address the issue of whether, as alleged, the sponsor impliedly promised to sell all its unsold shares. We hold only that plaintiffs’ contract cause of action withstands the sponsor’s CPLR 3211 motion to dismiss.
 

 We have reviewed defendants’ remaining contentions and find them without merit.
 

 Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order, insofar as appealed from, affirmed, etc.
 

 [1]
 

 .
 
 See generally
 
 General Business Law §§ 352-e — 352-eeee; 13 NYCRR part 18; Goldsmith, “Real Estate Financing,” Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, at 89-116; Levinson,
 
 Real Estate Investments, Public Offerings, and the New York Real Estate Syndicate Act
 
 (57 St. John’s L Rev 662 [1983]); Maccaro,
 
 Cooperative Conversions and Apartment Warehousing
 
 (63 NY St B J 30 [1991]).
 

 [2]
 

 . Noneviction plans prohibit sponsors from evicting tenants merely because they refused to purchase shares in the cooperative
 
 (see
 
 General Business Law § 352-eeee [2] [c] [ii]). By contrast, an “eviction plan” allows the sponsor to evict certain nonpurchasing tenants after the plan becomes effective (see General Business Law § 352-eeee [2] [d] [ii]- [iii]).
 

 [3]
 

 . [2] At the outset, we note a jurisdictional limitation on the scope of this appeal. Plaintiffs and plaintiffs’ amici, including the Attorney General, argue that the Attorney General does not have exclusive jurisdiction to prosecute Martin Act violations and that the Appellate Division erred in holding that plaintiffs had no standing to prosecute their fraud causes of action. Plaintiffs also argue that the Appellate Division wrongly dismissed the complaint’s fraud claims as duplicative of the contract claims. These issues are beyond this Court’s review because plaintiffs failed to cross-move for leave to appeal. We will generally deny affirmative relief to a nonmoving
 
 party (see Hecht v City of New York,
 
 60 NY2d 57, 61-62 [1983]), even where the Appellate Division broadly certifies the propriety of its order for review by this Court
 
 (see Graubard Mollen Dannett & Horowitz v Moskovitz,
 
 86 NY2d 112, 118 and n 2 [1995]). An exception exists only for cases where granting relief to a nonappealing party is necessary to give meaningful relief to the appealing party
 
 (see Cover v Cohen,
 
 61 NY2d 261, 277-278 [1984];
 
 Hecht,
 
 60 NY2d at 62).