(January 5, 2017)

■ GUIDANCE ENHANCED GREEN TERRAIN, LLC, Appellant, v BANK OF AMERICA MERRILL LYNCH, Also Known as MERRILL

LYNCH, et al., Defendants, and BANC OF AMERICA CREDIT PRODUCTS, INC., Respondent. [45 NYS3d 392]—

Order, Supreme Court, New York County (Melvin L. Schweitzer, Ref.), entered on or about April 8, 2015, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the first cause of action for breach and repudiation of the contract, reversed, on the law, without costs, and the motion denied.

The motion court erred in dismissing the first cause of action for breach and repudiation of contract based on documentary evidence (see CPLR 3211 [a] [1]). Defendants failed to establish that the terms of the assignment of claim agreement between plaintiff and defendant Banc of America Credit Products, Inc. (BACP), dated April 8, 2013, conclusively defeats that cause of action as a matter of law (see Leon v Martinez, 84 NY2d 83, 88 [1994]).

Plaintiff filed three interrelated claims in the New York bankruptcy and Swiss liquidation proceedings of three Lehman Brothers entities, Lehman Brothers Finance AG (LBF), Lehman Brothers Holdings, Inc. (LBHI) and Lehman Brothers Special Financing, Inc. (LBSF). The LBF or primary claim was based on a debt arising out of a 2004 ISDA Master Agreement. The LBHI or guarantee claim was based on a guarantee of the primary debt. The LBSF or security claim was based on a security agreement that provided additional collateral for the primary debt.

Pursuant to the assignment agreement between plaintiff and BACP, the claims were valued collectively at $21,961,082.56, which the agreement defined as the "Claim Amount." The LBF and LBHI claims were assigned to BACP for 55% of the Claim Amount ($12,078,595.40), of which 10% was held in "Reserve." Plaintiff retained the LBSF claim and was given "Defense Authority" rights that empowered it to settle that claim during a specified time period, subject to the "waterfall" formula set forth in section 8 (b) of the agreement, under which any recovery on the LBSF claim would be divided between plaintiff and BACP, with BACP receiving roughly two thirds of any distributions.

Plaintiff alleges that in 2013, LBSF offered to settle all claims by paying $21,000,000 for the LBSF claim, provided

that the LBF claim and LBHI claim were assigned to it at no additional cost. After BACP refused to consent to the deal, in April 2014, LBSF increased its offer to the full Claim Amount of $21,961,082.56. In the first cause of action, plaintiff alleges that BACP unreasonably withheld its consent to both proposals and unreasonably refused to execute the assignments of the LBF and LBHI claims that LBSF demanded as a condition of the settlement.

The motion court dismissed the cause of action on the ground that "no provision of the [assignment agreement] empowers [plaintiff] to compel BACP to assign those rights in the Claims that [plaintiff] 'irrevocably' sold to BACP." Characterizing the assignment of the LBF and LBHI claims as absolute and unconditional, the dissent agrees, and would hold that plaintiff did not have a contractual right to compel BACP to reassign those claims to a third party as a condition of a settlement that attributed no value to them. However, contrary to these findings, the assignment was not absolute and unconditional; the assignment agreement stated that *"[e]xcept as provided in Sections 8 (b) and (10)*, [plaintiff], for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto [BACP] all of [plaintiff]'s right, title and interest in, to and under" the LBF and LBHI claims (emphasis added).

Pursuant to section 10 (a), plaintiff was given "the sole and exclusive right to handle all matters relating to the Security Agreement and valuation of the Claims." While plaintiff was obligated to "use its reasonable efforts to maximize the value of the Claims," section 10 (a) also provided that "in exercising the Defense Authority [plaintiff] may take reasonable steps *to maximize the Security Proceeds*" (emphasis added).

Section 10 (a) further provided that BACP "shall cooperate with [plaintiff] *as reasonably required* to permit [plaintiff] to implement agreements relating to the Security Agreement, *including any settlement relating thereto*" (emphasis added). Section 10 (b) provided that while plaintiff's Defense Authority rights were in effect, "[n]either [plaintiff] nor [BACP] shall compromise or settle the Claims in an amount that is less than the Claim Amount without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed." Consistent with these provisions, section 14 mandated that BACP shall "execute and/or deliver, [or] cause to be executed and/or delivered, *all such instruments and documents* and to *promptly take all such action as [plaintiff] may reasonably request*, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement" (emphasis added).

Taken together, these provisions authorized plaintiff to settle the LBSF claim, alone or with the other claims, for the full Claim Amount, without BACP's consent, and obligated BACP to cooperate with plaintiff in implementing the settlement "as reasonably required" and to execute all documents and instruments as plaintiff "may reasonably request." Determining whether it was "reasonable" for plaintiff to request that BACP reassign the LBF and LBHI claims to LBSF in order to consummate a settlement for the full Claim Amount, of which BACP would have received $14,713,925.32, a profit of in excess of $2 million, and if reasonable, for BACP to refuse that request, are fact-specific inquiries, which should not be determined on a motion to dismiss (see DB Mansfield LLC v BNY Capital Funding LLC, 116 AD3d 636 [1st Dept 2014]; African Diaspora Mar. Corp. v Golden Gate Yacht Club, 109 AD3d 204, 213 [1st Dept 2013]; Shivers v Citibank, N.A., 12 AD3d 248 [1st Dept 2004]). BACP's argument that plaintiff only had the authority to determine the value of the claims is inconsistent with the language in section 10 (a) providing that plaintiff's authority to defend and enforce "the Security Agreement and valuation of the Claims" continues until, in pertinent part, "all issues relating to the Security Agreement are finally resolved."

Furthermore, based on the language of the assignment agreement, plaintiff has stated a claim that BACP breached the covenant of good faith and fair dealing in withholding its consent to a proposed settlement for the full Claim Amount, thereby "destroying or injuring the right of [plaintiff] to receive the fruits of the contract" (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [internal quotation marks omitted]; see also Peacock v Herald Sq. Loft Corp., 67 AD3d 442, 443 [1st Dept 2009] [finding issues of fact as to good faith that could not be resolved on a motion to dismiss]). Concur—Mazzarelli, J.P., Andrias and Gische, JJ.

Saxe and Kahn, JJ., dissent in a memorandum by Saxe, J., as follows: I would affirm the dismissal of the first cause of action for breach and repudiation of the contract. The terms of the assignment agreement between plaintiff Guidance Enhanced Green Terrain, LLC (Guidance), and defendant Banc of America Credit Products, Inc. (BACP) conclusively defeat that cause of action as a matter of law (see Leon v Martinez, 84 NY2d 83, 88 [1994]).

Guidance, a wealth management fund, invested about $21.9 million in Lehman Brothers Finance AG, pursuant to a February 2004 ISDA Master Agreement. After Lehman Brothers filed for bankruptcy in New York in September 2008, Lehman Broth-

ers Finance AG commenced liquidation proceedings in Switzerland. Guidance filed three claims as creditor in bankruptcy proceedings against three Lehman Brothers entities: the first against Lehman Brothers Finance AG (LBF) for the $21.9 million debt; the second against Lehman Brothers Holdings, Inc. (LBHI) as a guarantor of the LBF debt; and the third against Lehman Brothers Special Financing, Inc. (LBSF), which had provided collateral for that claim pursuant to a security agreement.

As documented in a trade confirmation dated December 14, 2012, BACP bought two of plaintiff's three creditor's claims against the Lehman entities—not all three, as the majority asserts. BACP purchased the primary claim against LBF (Primary Claim) and the claim against LBHI as guarantor (Guarantee Claim), for a price of approximately $12 million. Guidance retained the third claim against LBSF (Security Claim).

Due to the interrelated nature of the three claims, in order to clarify and protect their respective rights and obligations, the parties entered into the April 8, 2013 "Assignment Agreement" at issue here. Section 1 of the Assignment Agreement states, "Except as provided in Sections 8 (b) and 10, Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer all of Seller's rights, title and interest in, to and under" the purchased claims against LBF and LBHI, and, "subject to Paragraph 8 (b), all proceeds of the foregoing." Section 1 further states, "This assignment shall be deemed an absolute and unconditional assignment . . . for the purpose of collection and satisfaction."

Section 8 sets forth the parties' rights to receive proceeds of the claims. Section 8 (a) provides that all distributions on the claims BACP purchased "shall constitute property of the Buyer to which Buyer has an absolute right," subject to sections 8 (b) and 8 (c). Section 8 (b) sets out a complex formula for dividing between the parties any funds Guidance received for the Security Claim against LBSF that Guidance retained. This provision was necessary since in the event Guidance settled that claim, the settlement would reduce the value of the two claims BACP purchased. Section 8 (c) provides that "in the event that Debtors pay interest on the Claim Amount . . . solely in connection with, the Security Agreement, then Seller (and not Buyer) shall be the sole recipient of such interest payments."

Section 10 of the agreement, titled "Defense Authority," provides the primary basis for plaintiff's breach of contract claims against BACP. It states:

"(a) Notwithstanding anything herein to the contrary and except as provided in Section 10 (b) below, Seller shall have the sole and exclusive right to handle all matters relating to the Security Agreement and valuation of the Claims, including to appear in the [Liquidation and Bankruptcy] Proceedings and file pleadings and documents on behalf of Buyer (as record owner) in connection with the defense and enforcement of the Security Agreement and valuation of the Claims (the "Defense Authority"), until the earlier of (a) the date on which all issues relating to the Security Agreement were finally resolved, and (b) the fifth year anniversary of the Closing Date. *Seller shall use its reasonable efforts to maximize the value of the Claims, except that, notwithstanding the foregoing, in exercising the Defense Authority Seller may take reasonable steps to maximize the Security Proceeds.* Buyer shall . . . provide the Debtor Parties with written notification . . . of the Defense Authority, . . . and *shall cooperate with Seller as reasonably required to permit Seller to implement agreements relating to the Security Agreement, including any settlement related thereto.*

"(b) Neither Seller nor Buyer shall compromise or settle the Claims in an amount that is less than the Claim Amount without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. Upon termination of the Defense Authority, Buyer shall have the sole right to compromise or settle the Claims and without consent of Seller" (emphases added).

After this transaction was completed, Guidance embarked upon efforts to settle the Security Claim that it had retained. In late 2013 Guidance informed BACP of its proposed settlement with LBSF, under which LBSF would pay $21 million for the Security Claim, on the condition that BACP would assign the Primary Claim and the Guarantee Claim to LBSF. In other words, the proposed settlement would treat as valueless the two claims that BACP had purchased for $12 million, which claims BACP believed had substantial value. BACP rejected the settlement proposal.

In April 2014, Guidance contacted BACP with another settlement proposal substantially similar to the first, except that the purchase price was $21,961,082; once again, payment would be on account of the Security Claim, and BACP's two claims, allocated zero value, would be assigned to LBSF. Although BACP did not consent to the proposal, Guidance asserted that under the Assignment Agreement it had a right to unilaterally assign BACP's rights to the primary and guarantee claims; BACP then wrote directly to LBHI to inform it that there could be no assignment of BACP's claims without BACP's written consent.

The foundation of Guidance's first breach of contract claim is that it was a violation of the Assignment Agreement for BACP to fail to cooperate with Guidance in its efforts to effectuate a settlement of the claims and to actively sabotage Guidance's efforts.

The majority reads the Assignment Agreement to justify Guidance's claim that BACP breached the agreement by withholding its consent to, and interfering with, proposed settlements that would have returned "all or nearly all" of the value of the claims, thereby "destroying or injuring the right of [Guidance] to receive the fruits of the contract" (quoting *511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002]).

The majority misreads or misconstrues the terms of the agreement, particularly section 10. A careful reading of the agreement establishes, as a matter of law, that BACP did not have, so it could not have violated, any contractual obligation to sign off on the proposed settlements, and Guidance did not have any contractual right to require BACP to make such an assignment. Guidance's sale of the Primary and Guarantee claims to BACP was irrevocable, absolute and unconditional, and there is no relevant exception to BACP's rights to those claims that would allow Guidance to include a forced assignment of those claims in a settlement for less than their value.

Examination of the Assignment Agreement discloses that Guidance's characterization of the transaction with BACP as a "limited assignment" is not justified. BACP obtained more than a limited assignment of the Primary and Guarantee claims; it purchased those claims. What was limited were the rights that Guidance retained as to those claims, which were limited to control of their valuation.

The very first provision of the agreement, section 1, defines the transaction, clearly stating that "[e]xcept as provided in Sections 8 (b) and 10, Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer all of Seller's rights, title and interest in" the two claims. Nor do sections 8 (b) and 10 support Guidance's reasoning; neither gives Guidance the right either to unilaterally assign the Primary Claim and Guarantee Claim to a third party or to require BACP to assign those claims.

It is interesting to note that not only was the sale to BACP of the Primary Claim and the Guarantee Claim termed "absolute" and "unconditional," but also the agreement gave BACP *all* rights to any distributions paid on account of those two claims, while, in contrast, distributions arising from the

Security Claim were subject to division between Guidance and BACP under section 8 (b). To the extent section 8 (b) imposes limitations on any party's rights, those limitations seem to be against Guidance, not BACP.

Nor do the provisions of section 10, the Defense Authority, give Guidance the rights or authority that it claims and that the majority finds. The first sentence of section 10 gives Guidance the "sole and exclusive right to handle all matters relating to the Security Agreement and valuation of the Claims, including to appear in the Proceedings and file pleadings and documents on behalf of Buyer (as record owner) in connection with the defense and enforcement of the Security Agreement and valuation of the Claims." The only reasonable interpretation of this provision is that it gives Guidance all the rights of the owner of the Security Claim, but, as to the three claims together, *only* the right to handle all matters relating to their *valuation*. Notably, it was necessary to give Guidance the authority to defend its valuation of the three claims, because it was Guidance that had filed the claims, and, at the time the parties entered into the Assignment Agreement, the time for potential objectors to file objections to the value of the claims had not yet expired. It was therefore necessary for Guidance, as claimant, to have the ability to defend its claimed valuation if the issue arose.

The language of section 10 does not gives Guidance a right to maximize the value of the security claim at the expense of the other claims as Guidance suggests; the language "at the expense of the other claims" cannot be found in the agreement. The relevant sentences from section 10 (a) contain the following language: "Seller shall use its reasonable efforts to maximize the value of the Claims, except that, notwithstanding the foregoing, in exercising the Defense Authority Seller may take reasonable steps to maximize the Security Proceeds. Buyer shall . . . cooperate with Seller as reasonably required to permit Seller to implement agreements relating to the Security Agreement, including any settlement related thereto." The foregoing quoted language does not justify a conclusion that Guidance had the right to enter into a settlement that maximized the value of the Security Claim at the expense of the value of the claims it sold to BACP.

The majority points to the language "providing that plaintiff's authority to defend and enforce 'the Security Agreement and valuation of the Claims' continues until, in pertinent part, 'all issues relating to the Security Agreement are finally resolved.' " However, nothing in the cited language allows Guidance to

require BACP to assign the claims it purchased in a settlement that assigns all the value to the Security Claim and none to the two claims belonging to BACP.

Guidance insists that section 10 (b) of the Agreement gives it the right to negotiate a full or "near-full" value of the claims. However, what the agreement says is simply that "[n]either Seller nor Buyer shall compromise or settle the Claims in an amount that is less than the Claim Amount without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed."

BACP is indeed required by the agreement to "cooperate" with Guidance "as reasonably required" to permit Guidance to implement "any settlement" *relating to the Security Agreement*, and not to unreasonably withhold consent to Guidance's settlement of "the Claims" for less than the full amount of their deemed value. However, nothing in the language of either section 8 (b) or section 10 justifies requiring BACP to assign to a third party, for an assessed value of zero, claims it purchased from Guidance. Such a result would, in essence, allow Guidance to sell to the third party claims it had already sold to BACP. It cannot be reasonable to require BACP to give up all rights to the two claims it purchased for $12 million, from which it expected to earn substantial distributions, and it cannot be unreasonable for BACP to withhold consent to such an arrangement. I therefore dissent.