McQuade v Aponte-Loss (2021 NY Slip Op 03650)





McQuade v Aponte-Loss


2021 NY Slip Op 03650


Decided on June 10, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 10, 2021

532342
[*1]Brendan McQuade et al., Respondents,
v
Maya Aponte-Loss et al., Appellants.

Calendar Date:April 27, 2021

Before:Garry, P.J., Egan Jr., Lynch and Colangelo, JJ.

Allen & Maines, Ithaca (Russell E. Maines of counsel), for appellants.
The Crossmore Law Office, Ithaca (Andrew P. Melendez of counsel), for respondents.



Lynch, J.
Appeal from an order of the Supreme Court (McBride, J.), entered November 9, 2020 in Tompkins County, which denied defendants' motion to dismiss the complaint.
In 2019, the parties executed a purchase and sale agreement in which defendants agreed to purchase plaintiffs' property in the City of Ithaca, Tomkins County for $329,000. The parties' contractual obligations were made "contingent upon the issuance and acceptance of a written loan commitment for financing" in the amount of $263,200 by May 2, 2019 (hereinafter the commitment date). Under section 5.5.6 of the agreement, defendants were entitled to terminate the contract if no financing commitment was issued prior to that date. To exercise that option, however, defendants were required to provide "written notice" to plaintiffs. Either of the parties had a right to terminate the contract if no financing commitment was accepted by the commitment date and were obligated to provide "written notice" electing that option. In the absence of a notice of termination exercising that right, the contract was to "continue in full force and effect still subject to th[e] contingency." If a financing commitment was issued that met "the terms set forth in Part A and . . . [was] conditioned only upon no material adverse change in [defendants'] financial condition," defendants were required to accept the commitment "by the [c]ommitment [d]ate or prior to notice of termination by [plaintiffs] pursuant to [s]ection 5.5.6." Moreover, defendants were required to "furnish [plaintiffs] with a copy of the [c]ommitment, accepted by [them], promptly after receipt thereof."
Defendants received a mortgage commitment letter on May 7, 2019 in the amount of $324,000, but did not accept its terms.[FN1] By letter dated July 1, 2019, plaintiffs notified defendants that they had delivered title documents to defendants' former attorney a few weeks prior, who confirmed that they were satisfactory. Plaintiffs represented that they were "ready, willing and able to close" and that "time [was] of the essence," setting a closing date for July 18, 2019. On July 18, 2019, defendants sent plaintiffs a written notice of termination pursuant to the procedure set forth in the purchase and sale agreement and the closing did not take place. After selling their property to another purchaser for $306,500, plaintiffs commenced this action for breach of contract, contending that defendants were obliged to accept the May 7, 2019 commitment letter because the agreement remained intact at that point. Defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (1), (5) and (7), asserting that they were contractually entitled to terminate the agreement at any time since no financing commitment was issued by the commitment date. Following oral argument, Supreme Court denied defendants' motion, finding that plaintiffs' claim fit within a cognizable legal theory. Defendants appeal.
We affirm. In assessing a pre-answer motion to dismiss [*2]pursuant to CPLR 3211 (a) (7), this Court "must afford the complaint a liberal construction, accept the facts as alleged in the pleading as true, confer on the nonmoving party the benefit of every possible inference and determine whether the facts as alleged fit within any cognizable legal theory" (Graven v Children's Home R.T.F., Inc., 152 AD3d 1152, 1153 [2017] [internal quotation marks and citations omitted]; see Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 582 [2017]; Johnson v Haug, 193 AD3d 1200, 1201 [2021]). However, "this liberal standard will not save allegations that consist of bare legal conclusions or factual claims that are flatly contradicted by documentary evidence" (County of Saratoga v Delaware Eng'g, D.P.C., 189 AD3d 1926, 1927 [2020] [internal quotations marks and citations omitted]). Accordingly, "a court may dismiss . . . claims pursuant to CPLR 3211 (a) (1) when they are contradicted by the terms of 'a written agreement that is complete, clear and unambiguous on its face'" (id., quoting Thirty One Dev., LLC v Cohen, 104 AD3d 1195, 1196 [2013]).
Contrary to defendants' contention, the terms of the purchase and sale agreement do not clearly entitle them to dismissal of the complaint at this pre-answer juncture. Defendants posit that, because no financing commitment was issued prior to the commitment date, they had no obligation to accept the May 7, 2019 commitment letter or furnish plaintiffs with a copy thereof promptly after its receipt, and could terminate the agreement at any time without being in breach. The purchase and sale agreement suggests otherwise. Although section 5.5.6 permitted defendants to terminate the agreement upon the failure to obtain a financing commitment prior to the commitment date, they were required to provide "written notice" to plaintiffs to exercise that option. As alleged by plaintiffs, defendants did not do so until more than two months after the commitment date had passed — on the date of the contemplated closing and after plaintiffs had notified them that time was of the essence. Nor did either party terminate the agreement under section 5.5.6 by issuing the required written notice. The last sentence of section 5.5.6 provides that, in the absence of "said notice," the parties' performance obligations were to "continue in full force and effect still subject to [the] contingency."
Given the lack of limiting language, plaintiffs have a viable argument that the term "said notice" in the last sentence of section 5.5.6 refers to each party's right to terminate included within that section. Under that interpretation, defendants' contractual obligations — including their obligation to accept an appropriately-issued financing commitment — would, in the absence of a termination notice, continue "in full force and effect" following the passage of the commitment date. Section 5.5.3 supports that interpretation, as that provision obligated defendants [*3]to accept a financing commitment meeting the "terms set forth in Part A . . . by the [c]ommitment [d]ate or prior to notice of termination by [plaintiffs] pursuant to [s]ection 5.5.6" (emphasis added).
Although we pass no judgment on whether plaintiffs will ultimately prevail on their claim, when considering the contractual language in conjunction with the covenant of good faith and fair dealing implied within all contracts, we find that plaintiffs have pleaded a cause of action for breach of contract sufficient to survive a pre-answer motion to dismiss (see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002]; Vectron Intl., Inc. v Corning Oak Holding, Inc., 106 AD3d 1164, 1167 [2013]). Defendants' remaining contentions, including the purported grounds for dismissal under CPLR 3211 (a) (5), have been considered and found lacking in merit.
Garry, P.J., Egan Jr. and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Plaintiffs allege that defendants did not provide them with notice of the May 7, 2019 commitment letter and continued to communicate with them regarding the transaction through July 1, 2019.