Ria R Squared, Inc. v DW Partners, LP (2024 NY Slip Op 04363)

Ria R Squared, Inc. v DW Partners, LP

2024 NY Slip Op 04363

Decided on September 05, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 05, 2024

Before: Singh, J.P., Friedman, González, Higgitt, Michael, JJ. 

Index No. 651101/22 Appeal No. 1757 Case No. 2023-03028 

[*1]Ria R Squared, Inc., Plaintiff-Appellant,
v
DW Partners, LP, et al., Defendants-Respondents.

Winston & Strawn LLP, New York (George E. Mastoris of counsel), for appellant.
McDermott Will & Emery, New York (Dmitriy Tishyevich of counsel), for respondents.

Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about April 24, 2023, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the claims for breach of contract, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing as against defendant DW 80 South, LLC (DW 80 South) and the claims for fraud and negligent misrepresentation as against defendants DW Partners, LP (DW Partners), DW Commercial Real Estate, LLC (DW Real Estate), and DW Marcy, LLC (DW Marcy), and denied plaintiff's cross-motion for leave to file a second amended complaint, modified, on the law, to deny defendants' motion and to reinstate those claims except the claims for negligent misrepresentation as against DW Partners and DW Real Estate, and otherwise affirmed, without costs.
For the purposes of this appeal from a motion to dismiss pursuant to CPLR 3211(a)(7), all facts stated are allegations taken from the first amended complaint, which we assume to be true at this stage of the proceedings (see Greystone Funding Corp. v Kutner, 121 AD3d 581, 583 [1st Dept 2014]). The exception is the contents of the agreements, which are taken from the documentary evidence.
DW Partners is an investment advisor. The remaining DW defendants are affiliates of DW Partners. Plaintiff, an asset management company, entered into a Servicing Agreement with defendant DW Commercial Real Estate Finance, LLC (DW Finance). Under this agreement, DW Finance would present investment opportunities to plaintiff. If plaintiff chose to pursue an opportunity, it would enter into a separate agreement to govern that transaction. This lawsuit relates to three such transactions.
Plaintiff entered into an agreement with DW 80 South (the 80 South Agreement), a special-purpose vehicle for that transaction, to invest $25 million in a loan to a property developer. DW 80 South itself borrowed most of this loan from a bank. Pursuant to DW 80 South's Repurchase Agreement with the bank, that debt was senior to DW 80 South's debt to plaintiff. Aware that DW 80 South had not invested its own money, and thus had no direct stake in the outcome, plaintiff negotiated a term obligating DW 80 South to repay its obligations under the Repurchase Agreement. When defendants warned plaintiff that DW 80 South might default on its loan to the bank, plaintiff declined to invest more money. Defendants then threatened to form an affiliated entity that would purchase the bank's interest and foreclose on the loan. DW 80 South defaulted and defendants made good on their threat.
Plaintiff also invested in loans for two other construction projects — namely, the 425 Marcy project and the Flushing project. In connection with these projects, DW Partners and DW Real Estate prepared investment memoranda that misrepresented the cash equity that the projects' sponsors would invest. Regarding the Flushing project, these defendants also overstated the [*2]value of the loan. Ultimately, the Flushing project loan was foreclosed upon and the property sold. Additionally, DW Marcy warranted that the sponsor of the 425 Marcy project owned the property at issue, which was false. DW Marcy defaulted on the loan and the owner of the property has filed for bankruptcy.
The court improperly dismissed plaintiff's breach of contract claim against DW 80 South. In the 80 South Agreement, DW 80 South committed "to remain responsible for, and . . . timely to perform and comply with, the Retained Obligations." These "Retained Obligations" included obligations "that relate to [DW 80 South's] obligations under or arising from the Repurchase Agreement," i.e., the loan agreement with the bank. Accordingly, by alleging that DW 80 South defaulted on its loan under the Repurchase Agreement, plaintiff stated a claim for breach of the 80 South Agreement.
The Servicing Agreement also requires DW Finance to act "in good faith and in a manner consistent with its obligations under the Advis[o]rs Act." Although "Advisors Act" is not defined, defendants do not deny that it was intended to refer to the Investment Advisors Act of 1940 or that this Act imposes a fiduciary duty (see Santa Fe Indus., Inc. v Green, 430 US 462, 471 n 11 [1977]). Plaintiff has therefore stated a plausible reading of the Servicing Agreement that, except as specifically carved out in sections 2(d) and 7, imposed fiduciary duties on DW Finance. These duties would then be incorporated into the 80 South Agreement, which held DW 80 South to the same standard of care. This reading is arguably the only interpretation that gives full effect to all terms in the agreements (see Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017]). The breach of fiduciary duty claim against DW 80 South should not have been dismissed.
Plaintiff alleges not only a breach of the 80 South Agreement through failure to meet financial obligations, but separately, a scheme to divest plaintiff of its interest in the loan by purchasing and foreclosing on a senior loan.[FN1] Plaintiff has accordingly stated a claim for breach of the covenant of good faith and fair dealing, which is not duplicative of its contract claim (see AEA Middle Mkt. Debt Funding LLC v Marblegate Asset Mgt., LLC, 214 AD3d 111, 133 [1st Dept 2023]; F&R Goldfish Corp. v Furleiter, 210 AD3d 643, 646 [2d Dept 2022]). In assuming that plaintiff would have lost its interest absent defendants' conduct, the partial dissent improperly makes factual inferences favorable to the moving parties (see e.g. Greystone Funding, 121 AD3d at 583).
The dissent points out that DW 80 South was a special purpose vehicle, and that, at oral argument before Supreme Court, plaintiff agreed that adequate capitalization was not essential to its contract claim. From this, the dissent extrapolates that DW 80 South had no duty to maintain adequate capital. It does not follow, however, that DW 80 South did [*3]not implicitly covenant to act in good faith to maintain sufficient funds to carry out its express promise of making payments on the Repurchase Agreement.
The fraud claims asserted against DW Partners, DW Real Estate, and DW Marcy in connection with the 425 Marcy and Flushing projects should be reinstated. While certain of the statements relied upon by plaintiff as the basis for its claims concerned future events, they were sufficient to state a claim because they were known by defendants to be false (see Cristallina v Christie, Manson & Woods Intl., 117 AD2d 284, 294-295 [1st Dept 1986]). The disclaimers of reliance in the parties' agreements did not bar the fraud claims because the statements relied upon were incorporated by reference into the agreements themselves.
Plaintiff has not alleged any special relationship with, and hence any duty of accuracy by, DW Partners or DW Real Estate (see generally Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 180 [2011]). DW Marcy, however, agreed to act according to the same standard of care imposed on DW Finance by the Servicing Agreement. Therefore, plaintiff's claims for negligent misrepresentation should be reinstated as against DW Marcy (see Chan v Havemeyer Holdings LLC, 223 AD3d 403, 404-405 [1st Dept 2024]).
In view of the foregoing, plaintiff's argument that it should have been granted leave to file a second amended complaint is academic. Plaintiff may bring a new motion to replead, if appropriate.
All concur except Friedman, J. who dissents in part in a memorandum as follows:

FRIEDMAN, J. (dissenting in part)
 

While I concur with the majority to the extent it reinstates two causes of action (breach of contract and breach of fiduciary duty) based on the 80 South Street project, I respectfully dissent insofar as the majority reinstates a third claim arising from that project (breach of the implied covenant of good faith and fair dealing).[FN1]
As alleged in the second amended complaint (which Supreme Court treated as the operative pleading for the purpose of the motion to dismiss), plaintiff lost the entirety of its interest in the loan to defendant DW 80 South, LLC (DW 80 South) when, after DW 80 South defaulted on its obligation to repurchase the interest of the senior lender, a group of other lenders organized by defendant DW Commercial Real Estate Finance, LLC (DW Finance), through defendant New York 80 South Street, LLC (NY 80), bought out the senior lender's interest and then foreclosed on the loan to DW 80 South. Plaintiff had been invited to join the lenders funding NY 80 but, believing that the invitation was a sham because it had not been given sufficient information and time to make an informed judgment, plaintiff declined the invitation.
I agree with the majority that the allegations summarized above state a legally sufficient claim by plaintiff for breach of contract against DW 80 South, inasmuch as section 2.01(d) of the Participation Agreement (PA) between plaintiff and DW [*4]80 South required DW 80 South "timely to perform and comply with" its contractual obligations to the senior lender. Accordingly, plaintiff's breach of contract cause of action against DW 80 South (the fifth cause of action in the second amended complaint; the fourth cause of action in the first amended complaint) should not have been dismissed.[FN2]
A more complicated question arises, however, from plaintiff's assertion of claims based on defendants' orchestration of NY 80's purchase of the senior lender's interest and subsequent foreclosure thereon, thereby wiping out plaintiff's interest. As Supreme Court aptly noted at the argument of the motion to dismiss (with the concurrence of plaintiff's counsel), nothing in the Servicing Agreement (SA) between DW Finance and plaintiff, nor anything in the PA, required any defendant to bail out DW 80 South, either with or without plaintiff's participation, in the event of an imminent default by DW 80 South under the terms of the senior loan.[FN3] Thus, Supreme Court understandably questioned what grounds for complaint plaintiff had when defendants chose to rescue the project by organizing a buyout of the senior lender's interest. Had there been no buyout, plaintiff's interest would have been lost just as completely in a foreclosure by the original senior lender.
However, as the majority notes, the language of the SA is sufficiently ambiguous to create a triable issue as to whether DW Finance assumed a fiduciary duty to plaintiff in the administration of the loan and, moreover, the PA requires DW 80 South to "act with the same standard of care as is applicable to [DW Finance] under the SA." If such a fiduciary relationship did exist, a further question would be raised as to whether defendants were obligated, if they chose to seek to avoid a foreclosure by the senior lender, to do so by the method least prejudicial to plaintiff. That is to say, to offer plaintiff a genuine opportunity to participate in any bailout (which plaintiff claims was denied to it here) and, even if plaintiff chose not to participate, to save the project by means that would not wipe out plaintiff's interest entirely.[FN4] Accordingly, I concur in the reinstatement of the cause of action for breach of fiduciary duty (the first cause of action in the second amended complaint; the seventh cause of action in the first amended complaint) .
Finally, unlike the majority, I believe that Supreme Court correctly dismissed the cause of action for breach of the implied covenant of good faith and fair dealing (the seventh cause of action in the second amended complaint; the sixth cause of action in the first amended complaint). Unless defendants owed plaintiff a fiduciary duty (as discussed in connection with the breach of fiduciary duty cause of action), there is no basis for finding that defendants' actions prevented plaintiff from "receiv[ing] the fruits of the contract" (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [internal [*5]quotation marks omitted]). As previously discussed, when the relevant events occurred, DW 80 South was in acute financial distress and on the verge of defaulting on the loan to the senior lender. Nothing in either the SA or the PA entitled plaintiff to expect to recoup any of its loan under these circumstances, certainly not at the expense of other lenders attempting to save the project by putting more of their own money into it. Accordingly, the creation and funding of NY 80 (in which plaintiff chose not to participate), NY 80's acquisition of the rights of the senior lender and its subsequent exercise of those senior rights did not violate the implied covenant of good faith and fair dealing arising from plaintiff's agreements. In any event, the implied covenant claim is duplicative of the cause of action for breach of fiduciary duty.[FN5]
Contrary to the majority's assertion, my position that the claim for breach of the implied covenant of good faith and fair dealing should be dismissed is not based on any "assum[ption]" about would have happened had defendants not engaged in the conduct of which plaintiff complains. Rather, this cause of action is legally insufficient because, in the event DW 80 South defaulted on its obligations to the senior lender, avoiding the elimination of plaintiff's junior interest was not one of "the fruits of the contract" (Jennifer Realty, 98 NY2d at 153) that plaintiff had any right to expect to receive under the terms of the parties' written agreement, which expressly contemplated that plaintiff could lose its entire interest. Thus, plaintiff's implied covenant claim can only be sustained by "constru[ing] [the implied covenant] so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights" (Fesseha v TD Waterhouse Inv. Servs., Inc., 305 AD2d 268, 268 [1st Dept 2003]), a path that our prior case law rejects.
It bears noting that plaintiff no longer takes the position that defendants' conduct caused DW 80 South's financial difficulties, which presumably resulted from the nonperformance of DW 80 South's underlying loan to the developer of the property. At the oral argument of the motion before Supreme Court, plaintiff's counsel, when pressed by the court, essentially withdrew the claim that defendants breached a supposed duty — not set forth in any of the relevant agreements — "to maintain adequate capital in DW 80 South." To the extent plaintiff hopes to resurrect its claim for breach of a nonexistent duty of adequate capitalization in the guise of an implied covenant cause of action, that effort should be rejected. Notably, at the oral argument before Supreme Court, plaintiff's counsel admitted that DW 80 South is a "special purpose vehicle," which is inconsistent with any expectation that DW 80 South would have any capitalization beyond the loans made to it.
I do not agree with the majority's assertion that DW 80 South — which, as plaintiff concedes, was a special [*6]purpose vehicle with no assets beyond its loan to the developer and its security interest in the loan collateral — may have "implicitly covenant[ed] to act in good faith to maintain sufficient funds to carry out its express promise of making payments on the Repurchase Agreement" in the event (which did come to pass) that the underlying development loan failed to perform. A special purpose vehicle without operations of its own, which is what DW 80 South was, cannot capitalize itself; it can only receive capital infused into it by other persons or entities. Under the governing agreements, neither plaintiff nor defendants (the remaining junior lenders to DW 80 South) had any obligation to put more money into DW 80 South in the event the latter fell into danger of defaulting on the senior loan. Plaintiff and the other junior lenders each expressly assumed the risk of losing its entire interest under those circumstances and, under the terms of the PA each signed, none of them had any obligation to put more money at risk to bail out the others. Thus, contrary to the majority's view, in the event DW 80 South's borrower could not repay its loan (and DW 80 South, in turn, could not repay the senior lender), the PA afforded plaintiff no right to expect "[t]he recoupment of [its] investment . . . [as] the 'fruit of its contract.'" For that reason, and because the claim is duplicative of the breach of fiduciary duty cause of action, I would affirm Supreme Court's dismissal of the cause of action for breach of the implied covenant of good faith and fair dealing, a doctrine that is not supposed to be used to create new rights under a written agreement. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 5, 2024 

Footnotes

Footnote 1: The recoupment of plaintiff's investment was the "fruit[] of the contract" of which it was deprived (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [internal quotation marks omitted]), and not, as the dissent frames it, the elimination of plaintiff's junior interest in the loan.

Footnote 1: I concur with the majority's disposition of the portion of the appeal addressed to the claims for fraud and negligent misrepresentation based on the Marcy Street and Flushing projects.

Footnote 2: Whether any judgment on this claim will be collectible seems dubious, since it is undisputed that DW 80 South was a special purpose vehicle with no assets or operations other than the funds lent to it to finance the underlying project and the security interest in the loan collateral. However, the collectability of such a judgment is irrelevant to the legal sufficiency of the claim.

Footnote 3: As plaintiff also now concedes, nothing in the relevant SA required DW Finance to keep DW 80 South sufficiently capitalized to meet its obligations to the senior lender in the event the underlying development loan failed to perform.

Footnote 4: In this regard, while plaintiff's interest in the loan would have been diluted if plaintiff did not participate in additional lending to DW 80 South, such additional lending would not have wiped out that interest entirely. Rather than proceed in that fashion, DW Finance chose to have NY 80 buy out the senior lender's interest and then, as the new senior lender, foreclose on the loan, which necessarily had the effect of wiping out plaintiff's interest.

Footnote 5: I agree with the majority's assertion that plaintiff's implied covenant claim "is not duplicative of its breach of contract claim" (the latter being for the now-defunct DW 80 South's default on the senior loan). However, the implied covenant claim is duplicative of the fiduciary claim, since each of the latter two causes of action seeks recovery for the very same conduct — the buy-out of the senior lender's interest and subsequent foreclosure on the senior loan, resulting in the loss of plaintiff's junior interest.