■ U.S. ICE CREAM CORP. et al., Appellants, v CARVEL CORPORATION et al., Respondents.—In an action seeking an injunction and damages, *inter alia,* for breach of contract, the plaintiffs appeal from an order of the Supreme Court, Westchester County (Nastasi, J.), entered July 8, 1987, which denied their motion for a preliminary injunction.

Ordered that the order is reversed, with costs, and the motion is granted to the extent of enjoining the defendants, pendente lite, from:

(1) terminating the plaintiffs' exclusive license to sell Carvel products in Israel;

(2) taking any action to solicit or advertise for a new licensee to open and operate Carvel stores in Israel or to grant anyone other than the plaintiffs the exclusive license now held by the plaintiffs;

(3) interfering with or attempting to halt or disrupt shipments by suppliers to the plaintiffs; and,

(4) taking any other action directly or indirectly to interfere with the plaintiffs' suppliers or their continued shipment of goods and supplies to the plaintiffs; and the defendants are further directed to continue to ship all supplies, machinery, parts and materials necessary to the sale of Carvel ice cream and ice cream products in Israel to the plaintiffs; and it is further,

Ordered that the preliminary injunction is granted on condition that the plaintiffs maintain the undertaking posted pursuant to this court's order dated July 17, 1987.

In 1984, the defendant Carvel Corporation (hereinafter Carvel) entered into two contracts with the plaintiffs' assignor entitled "Carvel International License Agreement" (hereinafter the License Agreement) and "Carvel International Management Agreement" (hereinafter the Management Agreement). By the terms of these agreements, Carvel sold to the plaintiffs the right to establish and franchise 20 Carvel ice cream stores throughout the "State of Israel and Israeli occupied territories in the West Bank, Golan Heights and the Gaza Strip (collectively, the 'Area')". The Licensing Agreement further provided that the "Licensee's right to establish Carvel Stores shall be exclusive, subject to the exceptions contained herein, both for the Area as herein defined and for the duration of the Agreement". The Management Agreement provided that: "Carvel will supply management procedures and techniques, the equipment, products, ingredients (other than the Carvel Mixes which shall be prepared by manufac-

turers of dairy products procured and supervised by Carvel), supplies and packaging materials as needed by the Distributor and its retail licensees from time to time in the conduct of their respective distributorship and Carvel Store businesses, all in accordance with specifications, methods, information and expertise supplied by Carvel and all pursuant to the terms and conditions of this Agreement". Despite the problems encountered and expenses incurred in complying with strict Israeli dietary, health and import laws, by early 1987, the plaintiffs had opened seven popular and successful Carvel ice cream stores in Israel. In March 1987, an attorney from Carvel's legal department sent to Israel to inspect the Carvel stores and facilities allegedly found unauthorized machinery and ingredients being used to make the ice cream and products sold in the Carvel stores. The plaintiffs contend that certain modifications of ingredients as well as the construction of a separate factory for the manufacture of take-home products were necessary in order to comply with Israeli laws and regulations, and that all such modifications were approved by employees in Carvel's International Division which was disbanded in 1985.

In April 1987 Carvel served notice to the plaintiffs of 13 alleged breaches of contract to which the plaintiffs responded with a list of 6 alleged material breaches by Carvel. The plaintiffs then learned that Carvel had contacted an Israeli newspaper about publishing the following advertisement:

"CARVEL

"Commercial Ice Cream Manufacturer Wanted to produce and wholesale Carvel ice cream products throughout Israel. Contact: Carvel Corporation".

Convinced that Carvel was trying to terminate their licensing agreement and resell their franchise and distribution rights at a higher price, the plaintiffs filed this suit alleging breach of contract, fraud and intentional interference with the contractual and business relationships between the plaintiffs and their sublicensees. The complaint sought damages and an injunction against any action by Carvel to terminate the agreements or to advertise for a new licensee.

Although the plaintiffs' motion for a preliminary injunction was denied by the court of first instance, this court found that the plaintiffs had demonstrated their entitlement to injunctive relief in order to preserve the status quo and we granted such

relief on motion pending appeal. We hereby extend this relief pendente lite.

In the case at bar, the plaintiffs have demonstrated the necessity of injunctive relief in order to preserve the status quo pending trial. The defendants are clearly attempting to terminate the plaintiffs' exclusive licensing agreement and, absent a preliminary injunction, there is no assurance that the plaintiffs will be able to stay in business pending trial. Such interference with an ongoing business, particularly one involving a unique product and an exclusive licensing and distribution arrangement, risks irreparable injury and is enjoinable *(see, e.g., Chrysler Realty Corp. v Urban Investing Corp.,* 100 AD2d 921; *Roso-Lino Beverage Distribs. v Coca Cola Bottling Co.,* 749 F2d 124).* In the absence of any proof that Carvel will be harmed by the granting of injunctive relief in order to maintain the status quo, the existence of disputed factual issues should not preclude the remedy *(see, Burmax Co. v B & S Indus.,* 135 AD2d 599; *City Store Gates Mfg. Corp. v United Steel Prods.,* 79 AD2d 671; *see also,* CPLR 6301; *Blake v Biscardi,* 52 AD2d 834; *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.,* 70 AD2d 1021).* Mangano, J. P., Bracken, Eiber and Harwood, JJ., concur.