| |
|---|
| **Liberty Events, LLC v 175 Van Dyke LLC** |
| 2024 NY Slip Op 33485(U) |
| September 26, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 651761/2024 |
| Judge: Louis L. Nock |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. LOUIS L. NOCK**

*Justice*

PART **38M**

-----------------------------------------------------------------------------X

LIBERTY EVENTS, LLC,

Plaintiff,

- v -

175 VAN DYKE LLC and GREGORY T. O CONNELL,

Defendants.

-----------------------------------------------------------------------------X

INDEX NO. 651761/2024

MOTION DATE 04/09/2024, 06/07/2024

MOTION SEQ. NO. 001 002

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 001) 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, and 57

were read on this motion for                                INJUNCTION                                .

The following e-filed documents, listed by NYSCEF document numbers (Motion 002) 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, and 79

were read on this motion to                                DISMISS                                .

LOUIS L. NOCK, J.S.C.

This action arises out of plaintiff's lease of certain property located at 175 Van Dyke Street, Brooklyn, New York (the "premises"), in which it operates an event and catering business. As set forth in further detail below, the lease provides for a profit-sharing mechanism in lieu of fixed rent. Plaintiff seeks a preliminary injunction mandating that defendant Gregory T. O'Connell divest himself of shares of a nonparty company that owns a wholesale distillery, creating problems for the profit-sharing agreement herein, and to consolidate a Housing Court action between the parties with this action (Mot. Seq. No. 001). Defendants cross-move for an order of use and occupancy pendente lite. Plaintiff also moves to dismiss defendants' counterclaims and affirmative defenses (Mot. Seq. No. 002). Motion sequence numbers 001 and 002 are consolidated for disposition in accordance with the following memorandum decision.

[* 1]

**Background**

Pursuant to the lease signed by plaintiff and the predecessor in interest of defendant 175 Van Dyke LLC ("Van Dyke"), nonparty Pier 41 Associates ("Pier 41"), plaintiff leased the premises for a ten-year term beginning October 1, 2010, "for the operation of a catering, event, banquet, cabaret, restaurant, and/or liquor license establishment . . . . [Plaintiff], at its own expense, shall promptly apply for and with due diligence obtain any and all licenses and permits from time to time required, and shall abide by any and all governmental rules and regulations . . . ." (Lease, NYSCEF Doc. No. 6 ¶ 3.) In lieu of fixed rent and additional costs, "[plaintiff] shall pay [landlord] a fifty percent (50%) share of any and all net profits" deriving from plaintiff's business (*id.*, ¶ 5 [i]). To facilitate the profit-sharing, the liquor license for the premises for much of the relevant time period for this case has listed plaintiff and Pier 41 as co-licensees (expired license, NYSCEF Doc. No. 34).

There are two somewhat related inciting events behind the current dispute between the parties. Firstly, in 2012, Pier 41 transferred its interest in the premises to Van Dyke, at which time plaintiff began paying the landlord's share of net profits as well as water and sewer charges to Van Dyke rather than Pier 41 (O'Connell affirmation, NYSCEF Doc. No. 50, ¶¶ 10-11). From this, defendants infer that plaintiff was aware of the change in ownership and should have applied to the New York State Liquor Authority ("SLA") to change the liquor license to reflect the change in ownership (*id.*, ¶ 20). Plaintiff contends that it remained unaware that Van Dyke and Pier 41 were separate entities until 2020, when plaintiff sought to renew the lease and O'Connell reminded them that Pier 41 was no longer the landlord for the property (*id.*, ¶ 12; renewal letter, NYSCEF Doc. No. 25; Dean reply affirmation, NYSCEF Doc. No. 55, ¶¶ 6-7).

Secondly, in 2023, nonparty Western New York Energy, LLC ("WNY"), in which defendant O'Connell has held a .2431148% non-controlling, non-voting, membership interest since 2013, obtained a manufacturer's (distillery) license from the SLA (O'Connell affirmation, NYSCEF Doc. No. 50, ¶ 18). As all parties agree, this creates what is known as a "Tied House" violation, as the Alcoholic Beverage Control ("ABC") Law prevents the holder of a retail liquor license from also having an interest in a manufacturer's or wholesaler's license, and vice versa (ABC Law §§ 101, 106).

Since March 2023, plaintiff has not disbursed any net profit share, initially due to a dispute regarding accounting of certain losses, and then subsequently due to the Tied House violation. The parties differ as to the solution to this impasse. Plaintiff asserts that O'Connell should be required to divest himself of his interest in WNY to avoid interfering with the profit sharing mechanism, while defendants prefer to renegotiate the lease to a fixed monthly rental payment.

Plaintiff commenced this action in April 2024, in conjunction with an order to show cause requiring O'Connell to divest himself of his interest in WNY and to consolidate a nonpayment proceeding in Housing Court brought by Van Dyke with this action. The complaint alleges causes of action for specific performance and permanent injunction against Van Dyke, and permanent injunction against O'Connell. While plaintiff is somewhat vague as to the specifics of its proposed relief, from the allegations of the complaint, read broadly, it is clear that the primary relief sought is to compel O'Connell to divest himself of his interest in WNY. Defendants assert four counterclaims against plaintiff: breach of contract for failure to comply with various regulations and statutes regarding the liquor license, breach of contract for failure to

pay rent, a declaratory judgment regarding use and occupancy, and an accounting. Plaintiff now moves to dismiss the counterclaims, as well as defendants' affirmative defenses.

**Standards of Review**

"A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual" (CPLR 6301). Preliminary injunctions "should be issued cautiously and in accordance with appropriate procedural safeguards" (*Uniformed Firefighters Ass'n of Greater New York v City of New York*, 79 NY2d 236, 241 [1992]). "The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor" (*Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]).

Unlike ordinary preliminary injunctions, mandatory injunctions, i.e., ones in which the court directs a party to perform some act to preserve the status quo rather than refrain from doing so, are disfavored (*Second on Second Cafe, Inc. v Hing Sing Trading, Inc.*, 66 AD3d 255, 265 [1st Dept 2009] ["courts are generally reluctant to grant mandatory preliminary injunctions"] [internal quotation marks and citation omitted]). "A mandatory injunction should not be granted, absent extraordinary circumstances, where the status quo would be disturbed and the plaintiff would receive the ultimate relief sought, pendente lite" (*Spectrum Stamford, LLC v 400 Atl. Tit., LLC*, 162 AD3d 615, 617 [1st Dept 2018]). The movant must satisfy a "heavy burden of proving a clear right to mandatory injunctive relief" (*Rosa Hair Stylists, Inc. v Jaber Food Corp.*, 218 AD2d 793, 794 [2d Dept 1995]). Where the requested relief would effectively grant the movant the ultimate relief sought, or where the record establishes "sharp issues of fact, injunctive relief

should not be granted" (*Lehey v Goldburt*, 90 AD3d 410, 411 [1st Dept 2011] [internal quotation marks and citations omitted]). "The decision to grant or deny provisional relief, which requires the court to weigh a variety of factors, is a matter ordinarily committed to the sound discretion of the lower courts (*Nobu Next Door, LLC*, 4 NY3d at 840).

"On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]). "[The court] accept[s] the facts as alleged in the complaint as true, accord[ing] plaintiffs the benefit of every possible favorable inference, and determin[ing] only whether the facts as alleged fit within any cognizable legal theory" (*Id.* at 87-88). Ambiguous allegations must be resolved in plaintiff's favor (*JF Capital Advisors, LLC v Lightstone Group, LLC*, 25 NY3d 759, 764 [2015]). "The motion must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 [2002] [internal citations omitted]). "[W]here ... the allegations consist of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence, they are not entitled to such consideration" (*Ullmann v Norma Kamali, Inc.*, 207 AD2d 691, 692 [1st Dept 1994]).

**Discussion**

*Preliminary Injunction*

Plaintiff has failed to meet its burden to obtain a preliminary injunction. Plaintiff seeks specifically that the court compel O'Connell to sell or transfer his share of WNY to resolve the Tied House problem (order to show cause, NYSCEF Doc. No. 17). This is also the ultimate relief sought by plaintiff in its complaint, though plaintiff couches it in broader terms (complaint, NYSCEF Doc. No. 2, ¶¶ 54-58). This alone is sufficient reason to deny the application, as the

court may not grant plaintiff the ultimate relief it seeks through a preliminary injunction (*Spectrum Stamford, LLC*, 162 AD3d at 617).

Moreover, plaintiff cannot establish a likelihood of success on the merits. Plaintiff cites no case law that would require the court to force O'Connell to rid himself of an unrelated investment. Moreover, defendants establish that, at minimum, there are issues of fact as to whether plaintiff has been operating the premises with a liquor license outside the bounds of the ABC Law by failing to remove Pier 41 from the license following the sale to Van Dyke, and by engaging in various other activities that might run afoul of the ABC Law. Moreover, had the license been properly kept, WNY could have, as it did with other members, worked to obtain a statutory exemption from the Tied House rules (O'Connell affirmation, NYSCEF Doc. No. 50, ¶ 24); such exemptions appearing fairly common (ABC Law §§ 101 [1] [a] – [10] [a], 106 [5] [c], [11], [13]). As is well established, one who seeks equity must also have acted with equity and come to the court with clean hands (*e.g. Site Five Hous. Dev. Fund Corp. v Estate of Bullock*, 112 AD3d 479, 481 [1st Dept 2013]). Plaintiff argues that Van Dyke, as landlord and purported co-licensee, could have updated the SLA after the sale themselves. However, the lease specifically places the responsibility of obtaining and maintaining the license with plaintiff, requiring only that the landlord cooperate with plaintiff in doing so (lease, NYSCEF Doc. No. 6, ¶ 3). The court does not find that the cooperation requirement extends to a forced stock divestment.

Plaintiff argues that an injunction is appropriate because without it, plaintiff's business cannot operate. The only established fact at the moment is that plaintiff is not sharing profits with defendants; but defendants credibly suggest that plaintiff is continuing to operate while this dispute is pending. In any case, however, the cases plaintiff cites for this proposition are

distinguishable. In *U.S. Ice Cream Corp. v Carvel Corp.* (136 AD2d 626 [2d Dept 1988]), the defendant was actively attempting to terminate plaintiff's exclusive licensing agreement and could not demonstrate any harm from being ordered to refrain from acting against plaintiff during the course of the litigation. Here, defendants are not acting to terminate plaintiff's lease, and O'Connell would be harmed if he is forced to sell his stock in WNY. Likewise, in *Wilf v Halpern* (194 AD2d 508 [1st Dept 1993]), the court required the defendant to authorize a refinancing of partnership debt because it appeared that he was withholding authorization in order to force his partners to buy him out, in violation of his fiduciary duty to them. Here, the parties are not partners—O'Connell's innocuous use of the term partnership in the renewal letter to plaintiff notwithstanding—and owe no such duty to each other.

*Use and Occupancy*

"The landlord may recover a reasonable compensation for the use and occupation of real property, by any person, under an agreement, not made by deed; and a parol lease or other agreement may be used as evidence of the amount to which he is entitled" (Real Property Law § 220). "The award of use and occupancy during the pendency of an action or proceeding accommodates the competing interests of the parties in affording necessary and fair protection to both" (*MMB Assoc. v Dayan*, 169 AD2d 422 [1st Dept 1991]). Use and occupancy is a concept rooted in equity, separate and apart from a tenant's obligation to pay rent in accordance with the lease, in recognition of the fact that "[i]t is manifestly unfair that [a tenant] should be permitted to remain in possession of the subject premises without paying for their use" (*id.*). Thus, a court may consider the provisions of the lease in determining whether and for how much to award use and occupancy (*Synod of Bishops of Russian Orthodox Church Outside of Russia v Preschool of Am. (USA) Inc.*, 214 AD3d 466, 466-67 [1st Dept 2023]), but is not required to award the entire

monthly rent if the circumstances dictate otherwise (*Gap, Inc. v 44-45 Broadway Leasing Co., LLC*, 191 AD3d 549 [1st Dept 2021] ["We disagree with defendant that the motion court abused its discretion in setting use and occupancy at a rate of approximately 90% of the lease rates"]). Further, if a tenant is ultimately found to be the prevailing party at the end of the action, "it may be provided with a refund or rent credit" (*43rd St. Deli, Inc. v Paramount Leasehold, L.P.*, 107 AD3d 501, 502 [1st Dept 2013]).

Here, plaintiff does not seriously dispute that it is using and occupying the premises and not paying any rent to Van Dyke. Instead, plaintiff argues that, as it is not holding over, the only appropriate measure for use and occupancy is the net profit sharing arrangement in the lease. Logically, since the profit sharing is impermissible due to the Tied House violation, plaintiff asserts, an award of use and occupancy based upon the same is impermissible. However, use and occupancy is not dependent on an existing lease. Use and occupancy may be awarded on a quantum meruit basis where there is no enforceable contract (*Trump CPS LLP v Meyer*, 249 AD2d 22, 23 [1st Dept 1998] ["Since the apartments are thus used and occupied by tenants and other defendants, the landlord is entitled to an appropriate payment pending the outcome of the underlying litigation"]). Thus, assuming arguendo that the net profit sharing arrangement is not currently enforceable, use and occupancy may be recovered by Van Dyke upon the fair market value of the premises. Plaintiff does not seriously address this argument, nor does it challenge the merits of Peter Schubert's affirmation, offered to provide a fair market rental value for the property (*e.g. Split Rock Developers, LLC v Zartab, Inc.*, 135 AD3d 845, 846 [2d Dept 2016] ["the fair market rental value of the subject property was $9,000 per month, and that, as such, the plaintiff was entitled to an award of use and occupancy based upon that fair market rental value"]). Mr. Schubert's affirmation adequately lays out his calculation of a price for square

footage for premises being used for event space, or premises that have not been built out in the same neighborhood, and determined a yearly fair market rent of $1,710,000, or $142,500 per month (Schubert affirmation, NYSCEF Doc. No. 41, ¶ 12). Van Dyke's offer to plaintiff is below market rate, at $1,456,000, or approximately $121,333.33 per month (*id.*, ¶ 13). Accordingly, the court deems that sum a fair measure for use and occupancy, and sees no need for a further hearing on the subject (*Synod of Bishops of Russian Orthodox Church Outside of Russia v Preschool of Am. [USA] Inc.*, 214 AD3d 466, 467 [1st Dept 2023] ["Supreme Court also properly enforced article 54 without holding a hearing, as the award was not final"]).

*Consolidation*

"When actions involving a common question of law or fact are pending before a court, the court, upon motion, may order a joint trial of any or all the matters in issue, may order the actions consolidated, and may make such other orders concerning proceedings therein as may tend to avoid unnecessary costs or delay" (CPLR 602). A motion to consolidate is addressed to the discretion of the Court (*Cromwell v CRP 482 Riverdale Ave., LLC*, 163 AD3d 626, 627 [2d Dept 2018]). "[T]here is a preference for consolidation in the interest of judicial economy and ease of decision-making where there are common questions of law and fact, unless the party opposing the motion demonstrates that consolidation will prejudice a substantial right" (*Progressive Ins. Co. v Vasquez*, 10 AD3d 518, 519 [1st Dept 2004]).

Here, defendants represented that the nonpayment proceeding between the parties, captioned *175 Van Dyke LLC v Liberty Events, LLC et al.*, bearing Index No. LT-316523-23/KI and pending in the New York City Civil Court, Kings County (the "nonpayment proceeding") would be withdrawn, and did not oppose plaintiff's motion to consolidate the actions. A review

of the electronic docket for the nonpayment proceeding shows no stipulation of discontinuance or other order discontinuing the action, so the court will proceed on the consolidation motion.

As set forth in the nonpayment petition, Van Dyke commenced the nonpayment proceeding upon plaintiff's failure to continue paying rent, the same dispute that gives rise to the instant action (notice of petition and petition, NYSCEF Doc. No. 10). Accordingly, there are common questions of law and fact warranting consolidation. By failing to oppose the motion, defendants have failed to demonstrate any prejudice.

*Dismiss Counterclaims and Affirmative Defenses*

Defendants' first two counterclaims are for breach of the lease, specifically for failure to abide by the ABC Law and related regulations, and for the failure to pay rent. As damages, defendants seek an order directing plaintiff to do whatever needs to be done to obtain a license that does not involve adding Van Dyke, or, alternatively, to direct plaintiff to, in effect, renegotiate the lease to a fixed amount of rent rather than the present net profit sharing arrangement (*see*, Answer [NYSCEF Doc. No. 11] ¶¶ 165, 166), as well as a money judgment for the arrears (*id.*, ¶ 175). These claims sufficiently state a cause of action at the motion to dismiss stage, as defendants adequately allege the lease, Van Dyke's performance thereunder, plaintiff's breach, and Van Dyke's damages (*Harris v Seward Park Housing Corp.*, 79 AD3d 425, 426 [1st Dept 2010]). Defendant asserts that these causes of action must be time-barred because, in plaintiff's telling, they derive from plaintiff's failure to correct the liquor license in 2013 after Van Dyke bought the premises from Pier 41. Breach of contract claims have a six-year statute of limitations (CPLR 213 [2]). However, as plaintiff admits, in 2020, plaintiff was directly told by Van Dyke that Pier 41 was no longer the owner of the property and still failed to do anything to correct the license (renewal letter, NYSCEF Doc. No. 25), well within the six-

year period as plaintiff filed this action this year. Plaintiff also argues, as it did in opposition to the cross-motion for use and occupancy, that Van Dyke cannot recover a money judgment in the face of the Tied House violation, but the allegations in the answer adequately set forth that plaintiff has breached the lease in various ways. The resolution of the Tied House problem does not bar recovery once the matter is in fact resolved, as plaintiff would theoretically still owe rental arrears and need to correct those aspects of its use of the liquor license that defendants claim are in violation of the ABC Law.

The declaratory judgment counterclaim and the counterclaim for an accounting must, however, be dismissed. Defendants seek a declaration that they are entitled to use and occupancy, which is an award of money damages. A declaratory judgment will not issue where money damages provide adequate relief (*Empire 33rd LLC v Forward Ass'n Inc.*, 87 AD3d 447, 448 [1st Dept 2011]). Similarly, an accounting claim is unavailable where money damages are sufficient (*Unitel Telecard Distrib. Corp. v Nunez*, 90 AD3d 568, 569 [1st Dept 2011]). Defendants also fail to allege a fiduciary relationship, joint venture, or other special circumstances (*e.g. Eden v St. Luke's-Roosevelt Hosp. Ctr.*, 96 AD3d 614, 615 [1st Dept 2012]).

Finally, turning to the affirmative defenses, plaintiff makes specific arguments against the first affirmative defense of failure to state a cause of action and the fourth affirmative defense of lack of personal jurisdiction, and argues that the rest of the affirmative defenses are insufficiently pleaded. The voluminous allegations pleaded in support of the counterclaims are sufficient as a procedural matter to support these affirmative defenses (*534 E. 11th St. Hous. Dev. Fund Corp. v Hendrick*, 90 AD3d 541, 542 [1st Dept 2011] ["While not listed under the sections specifically titled for each defense, defendant pled factual allegations in the body of his answer sufficient to

give notice of what he intends to prove under his defenses"]), and plaintiff does not challenge the merits of these affirmative defenses in its papers.

As to the first and fourth affirmative defenses, plaintiff cannot dismiss a defense for failure to state a cause of action because it is not subject to such a motion unless all other defenses are legally insufficient (*Tribbs v 326-338 E 100th LLC*, 215 AD3d 480, 482 [1st Dept 2023]). An affirmative defense of lack of personal jurisdiction due to improper service, as is alleged here, may be pleaded in a responsive pleading, but defendants must then move to dismiss on that ground within 60 days thereafter (CPLR 3211 [e]). Defendants filed their answer and counterclaims on May 20, 2024 (NYSCEF Doc. No. 58), but failed to move to dismiss for lack of jurisdiction within the required time period, and therefore this affirmative defense must be dismissed.

**Conclusion**

Accordingly, it is hereby

ORDERED that so much of plaintiff's motion (Mot. Seq. No. 001) for a preliminary injunction is denied; and it is further

ORDERED that so much of plaintiff's motion to consolidate the nonpayment proceeding with this action is granted; and it is further

ORDERED that the nonpayment proceeding captioned *175 Van Dyke LLC v Liberty Events, LLC et al.*, bearing Index No. LT-316523-23/KI and pending in the New York City Civil Court, Kings County, is consolidated with the above-captioned action; and it is further

ORDERED that, within 30 days from the date of filing hereof, counsel for the movant shall serve a certified copy of this order upon the Clerk of the New York City Civil Court, Kings

**651761/2024 LIBERTY EVENTS, LLC vs. 175 VAN DYKE LLC ET AL
Motion No. 001 002**

Page 12 of 15

County, and shall pay the appropriate fee, if any, for such transfer and shall contact the staff of said Clerk to arrange for the effectuation of the transfer in an efficient manner; and it is further

ORDERED that service upon the Clerk of the Civil Court, Kings County, shall be made in accordance with any applicable protocol or other procedures of said county; and it is further

ORDERED that the Clerk of the Civil Court, Kings County, shall transfer the documents on file under Index No. LT-316523-23/KI to the Clerk of this Court for the purpose of consolidation; and it is further

ORDERED that the Clerk of the Civil Court, Kings County, and the Clerk of this court shall coordinate the transfer of the documents being transferred so as to ensure an efficient transfer and to minimize insofar as practical the reproduction of such documents, including with regard to any documents that may be in digital format; and it is further

ORDERED that the pleadings in the actions hereby consolidated shall stand as the pleadings in the consolidated action; and it is further

ORDERED that, within 30 days from the date of filing hereof, movant shall serve a copy of this order with notice of entry on the Clerk of the Court, who shall consolidate the documents in the actions hereby consolidated and shall mark his records to reflect the consolidation; and it is further

ORDERED that such service upon the Clerk of the Court shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on this court's website); and it is further

ORDERED that, as applicable and insofar as is practical, the Clerk of this Court shall file the documents transferred from the Civil Court, Kings County, in the consolidated case file

under Index Number of the consolidated action in the New York State Courts Electronic Filing System or make appropriate notations of such documents in the e-filing records of the court so as to ensure access to the documents in the consolidated action; and it is further

ORDERED that, within 30 days from the date of filing hereof, movant shall serve a copy of this order with notice of entry upon the Clerk of the General Clerk's Office, who is hereby directed to reflect the consolidation by appropriately marking the court's records; and it is further

ORDERED that such service upon the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the aforesaid *Protocol*; and it is further

ORDERED that defendants' cross-motion for use and occupancy pendente lite is granted, and plaintiff shall pay interim use and occupancy to defendant 175 Van Dyke LLC during the pendency of this action in the amount of $121,333.33 per month; and it is further

ORDERED that such interim use and occupancy payments shall be remitted to defendant 175 Van Dyke LLC on or before the 15th day of each month during the pendency of this action, with the first payment due on or before October 15, 2023, unless and until this action is terminated; and it is further

ORDERED that defendant 175 Van Dyke LLC's acceptance of the aforementioned payments as interim use and occupancy during the pendency of this action, and plaintiff's payment of same, is without prejudice and without waiver, and subject to a full reservation of all of the parties' rights in this action; and it is further

ORDERED that plaintiff's motion to dismiss the counterclaims and affirmative defenses is granted to the extent that the third and fourth counterclaims and fourth affirmative defense are dismissed; and it is further

ORDERED that plaintiff is directed to serve a reply to the counterclaims within 20 days after the date of filing hereof; and it is further

ORDERED that counsel are directed to appear for a preliminary conference in Room 1166, 111 Centre Street, New York, New York, on November 6, 2024, at 2:15 PM. Prior to the conference, the parties shall meet and confer regarding discovery and, in lieu of appearing at the conference, may submit a proposed preliminary conference order, in a form that substantially conforms to the court's form Commercial Division Preliminary Conference Order located at https://ww2.nycourts.gov/courts/1jd/supctmanh/preliminary_conf_forms.shtml, to the Principal Court Attorney of this Part (Part 38) at ssyaggy@nycourts.gov.

This constitutes the decision and order of the court.

ENTER:

_Louis L. Nock_

| 9/26/2024 | | | |
|---|---|---|---|
| **DATE** | | **LOUIS L. NOCK, J.S.C.** | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED  ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |