Catlin v City of New York (2025 NY Slip Op 51544(U))

[*1]

Catlin v City of New York

2025 NY Slip Op 51544(U)

Decided on September 29, 2025

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 29, 2025
Supreme Court, New York County

Michael Catlin, Plaintiff,

against
City of New York, Defendant.

Index No. 150454/2025

Plaintiff by John Scola, Law Office of John A. Scola, PLLC
Defendant by Corporation Counsel

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 16 were read on this motion to/for DISMISS.
Upon the foregoing documents, defendant the City of New York (the "City") moves pursuant to CPLR § 3211 (a)(5) and (a)(7) to dismiss the complaint. Plaintiff Michael Catlin ("Plaintiff") opposes and cross-moves to amend the complaint. For the reasons set forth herein, the cross-motion to amend is granted, and the motion to dismiss is granted in part and to the extent set forth herein.
FACTUAL BACKGROUND
In this action, Plaintiff seeks indemnification or reimbursement from the New York City Police Department (the "NYPD") in connection with his former employment as an international [*2]liaison to the NYPD stationed in Toronto, Canada (NYSCEF Doc No. 13, amended complaint).[FN1]
Plaintiff joined the NYPD as a Police Officer on July 2, 2001 (id. ¶ 21). At all times, he excelled in this role (id. ¶ 22). In 2007, he was accepted to the 13th Precinct Detective Squad, and in 2009, he was promoted to Detective (id. ¶¶ 24-25). In 2010, the NYPD Intelligence Division posted a job posting for NYPD Liaisons who would be assigned to police departments around the world in a reciprocal relationship with the City (id. ¶ 27). Plaintiff applied and was accepted for the position in 2011, which required a two-year commitment (id. ¶¶ 28-31). In the Spring of 2011, Plaintiff was informed that he would be assigned to Toronto, Canada, and was asked by the NYPD, "How fast can you be there?" (id. ¶ 33). Within two weeks, Plaintiff was searching for housing in Toronto and was assigned to begin working there by May 2011 (id. ¶ 33). In Toronto, Plaintiff worked out of the Toronto Police Service as an NYPD Liaison, facilitating information sharing between the NYPD and the Toronto Police Service (id. ¶¶ 34-35). Plaintiff excelled in the role and was reassigned beyond the initial two-year term (id. ¶ 39).
In 2015, Plaintiff married a Canadian citizen, and they had a child together in 2018 (id. ¶ ¶ 41-42). In 2018, Plaintiff obtained status as a permanent resident of Canada (id. ¶ 45). Thereafter, he spoke with an accountant who informed him that he probably owed taxes to Canada and advised him to speak with a tax attorney (id. ¶ 46). At that time, Plaintiff believed and informed the accountant that he did not have to pay taxes in Canada because he was an American on loan to the Toronto Police Service (id. ¶ 47). Plaintiff believed this because the NYPD never informed him that he would need to pay additional taxes in another country (id. ¶ 48). On the accountants' recommendation, Plaintiff spoke with a tax attorney who calculated that Plaintiff owed in excess of $250,000 in back taxes to the Canadian government (id. 49-51).
Plaintiff indicates that the NYPD never informed him that he would need to pay additional taxes in another country, and did not provide him with any written guidance or access to legal or financial advisors regarding the tax implications of the international liaison position (id. ¶¶ 48, 56). Plaintiff contends that he "reasonably believed, based on past practice and [the City's] silence, that no foreign tax burden would apply," and that he "reasonably relied on [the City's] representations and omissions regarding tax liability, expecting that he would not incur personal foreign tax obligations in light of past practices and internal assurances" (id. ¶¶ 57, 59). This belief "caused him to take no protective measures" (id. ¶ 58).
After being informed of the tax debt, Plaintiff immediately notified the NYPD, informing his Sergeant, Lieutenant, and Thomas Gelati, who was the Chief of Intelligence at the time ("Gelati") (id. ¶ ¶ 52, 53). Gelati asked Plaintiff if he was a dual citizen and if Plaintiff claimed the foreign tax exemption" (id. ¶ 54). Plaintiff explained that he was a permanent resident and that he claimed the foreign tax exclusion since 2013 (id. ¶ 55). Gelati told Plaintiff "to either pay the bill himself or come home" (id. ¶¶ 61-62). Galati, or another NYPD representative, insinuated that if Plaintiff were to return home permanently, he could avoid the tax obligation (id. ¶ 64). Plaintiff explained that he was married to a Canadian citizen, with whom he has a child, and he could not "just up and leave to avoid charges of tax evasion" (id. ¶ 66). He "explained to the NYPD that they must file a voluntary disclosure form with the Canadian [*3]Revenue Agency," and if the form was approved, Plaintiff would have penalties and interest greatly reduced (id. ¶¶ 68, 69). "The voluntary disclosure could also result in the Canadian Revenue Agency agreeing not to prosecute Plaintiff for tax evasion" (id. ¶ 70). "The NYPD did nothing to correct the problem" (id. ¶ 73). Plaintiff asserts that the NYPD had a duty to advise him regarding the regulations surrounding a liaison employee working in another country, and it breached this duty, which caused Plaintiff harm (id. ¶¶ 71-72).
In 2020, "Plaintiff's Lieutenant called Plaintiff and informed him the NYPD was refusing to cover the tax bill" (id. ¶ 74). The Lieutenant apologized profusely and told Plaintiff that "this was the hardest call he ever had to make" (id. ¶ 75). After the call, Plaintiff paid $245,000 to the Canadian government for back taxes, which he asserts were "really owed by the NYPD" (id. ¶ 76). Plaintiff took $100,000 out of his deferred compensation account to pay the bill, and "was forced to take out an additional loan to pay the Canadian taxes" (id. ¶ 77-78).
In April 2023, Plaintiff received a notice that he owed an additional $250,000 to the Canadian government (id. ¶ 79). Plaintiff immediately contacted the NYPD "to let them know that he [would] be financially ruined if he [had] to pay this additional quarter of a million dollars" (id. ¶ 80). Plaintiff told the NYPD that "they should be the ones paying this additional fee" (id. ¶ 81). Plaintiff asserts that the NYPD "pays the additional taxes in other posts around the world" and "has been paying the Singapore taxes for the NYPD liaison there since 2011" (id. 82-83).
In July 2023, Plaintiff had one or more meetings in New York City with the NYPD to discuss the tax burden (id. ¶ 87-88). At the meeting, Plaintiff attempted to explain what the NYPD needed to do to avoid the tax burden (id. ¶ 88). Specifically, the NYPD needed to file a government employees exemption so that they could obtain an exemption and be absolved of the tax burden (id. ¶ 89). Plaintiff informed the NYPD that they were paying taxes for the liaison in Singapore, and he should get the same benefit (id. ¶ 90). At the meeting, NYPD Chief Hart "admit[ed] that the tax burden is the responsibility of the NYPD and not Plaintiff" (id. ¶ 91). After the meeting, the NYPD chose to shut down the Singapore liaison position (id. ¶ 92). In September 2023, Plaintiff was informed that the NYPD would be closing Canadian liaison positions due to the tax liability (id. ¶¶ 93-94).
Thereafter, the NYPD retained the services of PKF O'Connor Davies ("PKF"), an accounting and auditing firm, to assess Plaintiff's tax liability and determine how to resolve the problems he was experiencing (id. ¶ 95). Plaintiff contends that the City "was aware, at the time of Plaintiff's assignment, that foreign tax obligations existed for NYPD liaisons and that such liabilities were routinely paid by the City in other foreign posts" (id. ¶ 96). Plaintiff further asserts that, "[d]espite this knowledge, the City failed to disclose this material information to Plaintiff or provide any written policy or guidance, constituting a concealment of known risks," upon which he detrimentally relied (id. ¶ 97).
In October 2023, Plaintiff received a discretionary promotion to 2nd Grade Detective (id. ¶ 98). In December 2023, Plaintiff's Lieutenant advised Plaintiff that he would be "covering all of Canada now that the Montreal location has been closed" (id. ¶ 99). In January 2024, the Singapore post was closed, and Plaintiff was informed that the NYPD would be closing the Toronto location by the beginning of February (id. ¶ 100, 101). The Singapore and Montreal locations were given six and three months to close, respectively (id. ¶ 102).
Plaintiff had a meeting with the NYPD in early February 2024 to ask for more time (id. ¶ 103). At the meeting, it was discussed that PKF had reached a finding in Plaintiff's case, but the [*4]results of the audit were not shared with Plaintiff (id. ¶¶ 104-105). Plaintiff made three additional requests for the audit report but was not given access to the report (id. ¶ 106). When discussing the tax issue at this meeting, Plaintiff was told that "this issue is his fault because he 'got married' which put Plaintiff 'on the radar' of the Canadian government" (id. ¶ 107). The NYPD again asked Plaintiff to "just come home to avoid the tax burden" (id. ¶ 108). Plaintiff "subsequently learn[ed]" that the NYPD paid the tax burden for the liaisons in Singapore, France and even in Washington, D.C. (id. ¶ 112). Plaintiff contends that the City's refusal to reimburse him despite paying the tax liability of similarly situated liaisons was not the result of a uniform policy or clerical mistake, but was instead arbitrary and capricious, motivated by Plaintiff's persistent advocacy for equitable treatment and possible internal political factors (id. ¶ 113). He contends that the "disparate treatment was intentional and without rational justification" and supports an inference of negligence and bad faith (id. ¶¶ 113, 114).
After the February 2024 meeting, Plaintiff learned that the PKF audit reached the conclusion that the NYPD was at fault for the tax issues and is responsible for the tax burden, not Plaintiff (id. ¶ 121). In March 2024, after paying nearly $500,000 in back taxes, Plaintiff received a letter from the Canadian Revenue Agency stating that he owes more than $245,000 to the Canadian government (id. ¶ ¶ 123, 124). At this point, the NYPD informed him that it would not reimburse him for the $500,000 he has already paid, nor will they pay the more than $245,000 currently owed (id. ¶ 126). Plaintiff was forced to retire to avoid owing more money and due to the NYPD closing down the liaison position (id. ¶ 131). On May 14, 2025, the Canadian Revenue Agency contacted Plaintiff and informed him that it would be garnishing his pension to pay off the additional taxes owed (id. ¶ 136). Plaintiff formally retired on May 16, 2024 (id. ¶ 132).

PROCEDURAL BACKGROUND
On May 15, 2024, Plaintiff filed a notice of claim. On January 10, 2025, Plaintiff commenced this action by filing a summons and complaint that interposes causes of action for negligence, negligent inflection of emotional distress, and breach of the implied covenant of good faith and fair dealing against the City (NYSCEF Doc No. 1, complaint). On April 1, 2025, the City filed the instant pre-answer motion to dismiss the complaint on the grounds that Plaintiff's causes of action are time-barred and for failure to state a cause of action (NYSCEF Doc Nos. 2-8, motion to dismiss). The City argues that Plaintiff's complaint should be dismissed because he does not allege facts that establish the City owed Plaintiff a special duty, did not provide a written employment contract outlining the City's duty toward Plaintiff, and because Plaintiff's claims are time-barred by the General Municipal Law's one-year and 90-day limitations and the CPLR's three-year limitations. The City also argues that the complaint should be dismissed because the notice of claim was untimely.
Plaintiff opposes the motion and cross-moves to amend the original complaint (NYSCEF Doc No. 11-13, cross-motion to amend). Plaintiff argues that the cross-motion should be granted because the City will not be prejudiced by the amendment, the proposed amended complaint is not patently devoid of merit or palpably insufficient, and the proposed amended complaint includes greater details regarding Plaintiff's claims. In opposition to the motion, Plaintiff argues that the factual allegations pleaded in the complaint and amended complaint sufficiently state causes of action for negligence, negligent infliction of emotional distress, and breach of the [*5]implied covenant of good faith and fair dealing. Furthermore, Plaintiff alleges that his causes of action are not time-barred because the tax obligations were not final or fully known in 2018 and the NYPD did not definitively refuse to pay the debt until 2024, following discussions and an accounting that continued into 2023.
In reply, the City argues that Plaintiff's proposed amended complaint fails to cure the pleading deficiencies of the original complaint. the City further argues that it did not owe Plaintiff a duty to pay his Canadian tax liabilities and that Plaintiff did not provide any written contract or collective bargaining agreement identifying a promise from the NYPD that it would pay for Plaintiff's foreign tax liabilities. Finally, the City argues that Plaintiff's claims are time-barred by the statute of limitations because he was aware of, and began paying, his Canadian back taxes in 2018.

DISCUSSION
A. Cross-Motion to Amend
As a threshold matter, Plaintiff cross-moves to amend the complaint. Pursuant to CPLR § 3025, a party may amend their pleading "once without leave of court within twenty days after its service, or at any time before the period for responding to it expires, or within twenty days after service of a pleading responding to it," or "at any time by leave of court or by stipulation of all parties" (CPLR § 3025 [a]-[b]). Because a motion to dismiss extends the defendant's time to answer the complaint until ten days after service of notice of entry of an order deciding the motion, the plaintiff may amend the complaint as of right during the pendency of a pre-answer motion to dismiss (CPLR § 3211 [f]; Roam Cap., Inc. v Asia Alternatives Mgmt. LLC, 194 AD3d 585, 585-586 [1st Dept 2021]). Therefore, Plaintiff is entitled to amend his complaint as of right and the motion is granted. Whereas "an amended complaint supersedes the original complaint," and the City has responded in its reply to Plaintiff's amended complaint, the court will consider the amended complaint as the operative pleading for the motion to dismiss (Nimkoff Rosenfeld & Schechter, LLP v O'Flaherty, 71 AD3d 533, 533 [1st Dept 2010] ["It is well settled that an amended complaint supersedes the original complaint, thus rendering without legal effect the defective earlier pleading"]; Zaiger LLC v Bucher L. PLLC, 238 AD3d 687, 687-688 [1st Dept 2025] [trial court correct applied pending motion to dismiss to amended complaint where movant had opportunity to address newly added cause of action]).
B. Sufficiency of Pleading
On a motion to dismiss brought under CPLR § 3211, the court must "accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994] [citations omitted]). Ambiguous allegations must be resolved in the plaintiff's favor (see JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015]). The court must be liberally construe the complaint and "accept as true the facts alleged in the complaint and any submissions in opposition to the dismissal motion" (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002] [internal citations omitted]). However, a pleading consisting of "bare legal conclusions" is insufficient to [*6]defeat a motion to dismiss (Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006], affd 9 NY3d 836 [2007], cert denied 552 US 1257 [2008]) and "the court is not required to accept factual allegations that are plainly contradicted by the documentary evidence or legal conclusions that are unsupportable based upon the undisputed facts" (Robinson v Robinson, 303 AD2d 234, 235 [1st Dept 2003]).
Plaintiff's amended complaint interposes causes of actions for negligence, negligent infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing. The City moves pursuant to CPLR § 3211 (a)(7) to dismiss all three causes of action. First, the City argues that the complaint fails to state a cause of action for negligence because Plaintiff does not plead the existence of a "special duty" owed to him by the City or otherwise fails to plead breach of an ordinary duty of care owed to Plaintiff. Plaintiff asserts that a special duty is not required because the City's alleged acts and omissions "are analogous to those of a private employer managing international assignments and payroll obligations," and therefore "traditional negligence standards apply" (NYSCEF Doc No. 13, amended complaint). Plaintiff further asserts that he has sufficiently pleaded a cause of action under the ordinary rules of negligence.
To maintain a cause of action in negligence, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (Pasternack v Lab's Corp. of Am. Holdings, 27 NY3d 817, 825 [2016]). "The question of whether a defendant owes a legally recognized duty of care to a plaintiff is the threshold question in any negligence action" (On v BKO Exp. LLC, 148 AD3d 50, 53 [1st Dept 2017]). "In the absence of a duty, as a matter of law, there can be no liability" (Pasternack, 27 NY3d at 825). When a negligence claim is asserted against a municipality, the court must also determine whether the allegations implicate the "special duty rule" (Ferreira v City of Binghamton, 38 NY3d 298, 208 [2022]). To determine whether the special duty rule applies, the court must first determine "whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (id.). "[I]f the action challenged in the litigation is governmental, the existence of a special duty is an element of the plaintiff's negligence cause of action" (id.).
"A municipality's varied functions may be interspersed with both governmental and proprietary elements and, therefore, the determination of the primary capacity under which a governmental agency was acting turns solely on the acts or omissions claimed to have caused the injury" (id. at 309 [internal quotation marks omitted]). Where a government entity performs a "purely proprietary role," that is, where its activities essentially substitute for or supplement traditionally private enterprises, it is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties (id. at 309 [giving as an example where a government entity acts as a landlord]). Conversely, a governmental entity performs a governmental function "when its acts are undertaken for the protection and safety of the public pursuant to the general police powers," the court must determine the extent to which the municipality owed a special duty to the injured party (id. ["Examples of governmental functions include fire protection services, the oversight of juvenile delinquents, the issuance of building permits or certificates of occupancy, garbage collection, and the provision of front-line emergency medical services").
Here, the City cites no compelling reason for this court to conclude that the allegations set forth in the amended complaint implicate a governmental function such that the "special duty" rule would apply. The City does not indicate what challenged action it asserts was [*7]governmental (NYSCEF Doc No. 6, memo in support at 7). Instead, the City alleges, in a conclusory manner, that Plaintiff must plead a "special duty," but does not elucidate how its actions as Plaintiff's employer were undertaken for the protection and safety of the public at large or how any specific negligent act or omission alleged in the amended complaint constitutes a governmental function. Although Plaintiff was employed by the NYPD and policing is a "long-recognized quintessential governmental function," Plaintiff was not the subject of police action. Rather, Plaintiff alleges that the City engaged in acts and omissions in its capacity as his employer, which resulted in the harm alleged. As an employer, the City is charged with the same responsibilities as a private employer, including, inter alia, the hiring and retention of employees, maintaining a safe work environment, paying wages and managing employee benefits, and compliance with applicable labor and tax laws. As such, the City acts in a proprietary role within the confines of the employment relationship between the City and its employees. The City does not cite to any governmental function that the City undertakes as an employer that would implicate a special duty in this circumstance. As such, the ordinary rules of negligence apply and Plaintiff need not plead breach of a "special duty" (Ferreira, 38 NY3d at 309).
Under the ordinary rules of negligence, "the existence and scope of a duty is a question of law requiring courts to balance sometimes competing public policy considerations" (Espinal v Melville Snow Contractors, Inc., 98 NY2d 136, 138 [2002]). Many of an employer's common law duties to its employees have been codified and are now regulated by statute. For example, an employer's common law duty to maintain a safe workplace is codified by Labor Law § 200 (see Arcabascio v Bentivegna, 142 AD3d 1120, 1121 [2d Dept 2016]), the Fair Labor Standards Act regulates the payment of fair wages, and the New York State and City Human Rights law prohibits discrimination and retaliation against employees.
Similarly, employers also have legal obligations under Title 26 of the United States Code (the "Tax Code") and New York State Tax Law (the "Tax Law") with respect taxation of its employees. For example, employers are required to report required information to the relevant taxing authority, provide certain tax disclosures to employees, withhold state and federal income and employment taxes from employees' wages, and remit tax payments to the appropriate tax authority (see Employer's Tax Guide, IRS Publication 15 [2025], Catalog No. 10000W, https://www.irs.gov/pub/irs-pdf/p15.pdf [last accessed September 25, 2025]; Department of Taxation and Finance, Withholding tax, 
https://www.tax.ny.gov/bus/wt/wtidx.htm [last accessed September 25, 2025).
When an American citizen is employed by a United States employer but lives and works in Canada, the United States-Canada Income Tax Treaty of 1980, and amendments thereto (the "Treaty") is implicated (Canada-United States Convention with Respect to Taxes on Income and on Capital, TIAS No. 11 [1980], reprinted at Canada — Tax Treaty Docket 
https://www.irs.gov/pub/irs-trty/canada.pdf
[last accessed September 22, 2025]; see also IRS Publication 597, Information on the United States-Canada Income Tax Treaty, 
https://www.irs.gov/pub/irs-pdf/p597.pdf
[last accessed September 17, 2025; see also David J. Marchitelli, J.D., Annotation, Canada-United States Convention with Respect to Taxes on Income and on Capital and Subsequent Protocols, U.S.-Can., Sept. 26, 1980, TIAS No. 11, 087, [*8]28 ALR Fed 3d Art 1).[FN2]
 Canadian tax laws also apply to United States employers with employees working in Canada (see, e.g., Government of Canada, "Non-resident employer certification," 
https://www.canada.ca/en/revenue-agency/services/tax/international-non-residents/information-been-moved/rendering-services-canada/non-resident-employer-certification.html [last accessed September 26, 2025]).
Plaintiff asserts the City "owed Plaintiff a duty of care arising from their role as his employer, particularly as to financial reporting, compensation structuring, and compliance with relevant tax obligations related to his overseas assignment," and that the City breached its duty "by failing to properly advise, withhold, remit, or otherwise manage Plaintiff's tax liabilities in accordance with applicable laws and policies" (NYSCEF Doc No. 13, amended complaint ¶ 176). As Plaintiff's employer, the NYPD unquestionably has a legal obligation to comply with all applicable tax laws regarding their employees, including the Tax Code and Tax Act, and any applicable provisions of the Treaty or any Canadian tax law applicable to employers whose employees work in Canada. Specifically, Plaintiff alleges that the NYPD failed and/or refused to file a voluntary disclosure form with the Canadian Revenue Agency in connection with his employment (NYSCEF Doc No. 13, amended complaint ¶¶ 68-70), refused to file a government employees exemption that would relieve Plaintiff of the tax burden (id. ¶ 89), "had a duty to Plaintiff to know about the regulations surrounding a liaison employee working in another country and failed to honor that duty" (id. ¶ 71), failed to disclose this material information to Plaintiff or provide any written policy or guidance regarding tax liability (id. ¶ 97), and that these failures caused Plaintiff to incur additional tax liability (id. ¶¶ 72-74).
Although couched as a claim for negligence, Plaintiff seeks damages through indemnification and restitution (NYSCEF Doc No. 13, amended complaint, prayer for relief). "Indemnification is an equitable remedy reflecting that is nothing short of simple fairness to recognize that a person who . . . has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity" (Chem. Bank v Stahl, 272 AD2d 1, 19 [1st Dept 2000], citing McDermott v City of New York, 50 NY2d 211, 217 [1080], quoting Restatement of Restitution § 76 [internal quotation marks omitted]). "The gravamen of an action for indemnity is that both parties . . . are subject to a duty to a third person under such circumstances that one of them, as between themselves, should perform it rather than the other" (id.).
On a motion to dismiss, this court must accept the facts alleged in the amended complaint as true and accord the Plaintiff the benefit of every possible inference, "must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002] [internal citations omitted]). Taken together, the factual allegations set forth in the complaint are sufficient to state a cognizable claim for equitable indemnification on [*9]a theory that the City's negligent failure to comply with its own tax obligations in connection with his employment caused him to incur tax obligations or additional tax obligations to the Canadian government that were greater than he otherwise would have owed had the City complied. Plaintiff alleges that the City's refusal to provide disclosures or file a government employees exemption with the Canadian government deprived him of tax exemptions he was otherwise entitled to, causing him to incur additional tax liability. Article XIX of the Treaty contains at least one such exemption, which counsel to the City referenced at oral argument on this motion, stating, in part, "[t]here is a treaty where certain municipal employees could have been exempt from paying Canadian tax or there is some sort of offset . . . [b]ut that would have had to be, one, we don't know what Canada's interpretation of that treaty is. And there would have to be, my understanding, some sort of agreement between the NYPD or New York City and Canada before such offset would have been able to happen." (NYSCEF Doc No. 17, at 6).
The exemption set forth in the Treaty provides that "[r]emuneration, other than a pension, paid by a Contracting State or a political subdivision or local authority thereof to a citizen of that State in respect of services rendered in the discharge of functions of a governmental nature shall be taxable only in that State" (id., Article XIX, "Government Service"). Under Canadian tax law, non-resident employers are required to withhold and remit taxes for employees in Canada, even if the employee is likely to be exempt from tax in Canada (Government of Canada, "Non-resident employer certification," https://www.canada.ca/en/revenue-agency/services/tax/international-non-residents/information-been-moved/rendering-services-canada/non-resident-employer-certification.html [last accessed September 26, 2025] ["Therefore, any employer, including a non-resident employer, is required to withhold amounts on account of the income tax liability of an employee in Canada even if the employee is likely to be exempt from tax in Canada because of a tax treaty."]).[FN3]
At this stage of the litigation, the extent of the City's legal obligations vis-à-vis Plaintiff's employment while in Canada involve both factual and legal questions that cannot be resolved on a motion to dismiss, absent a showing by the City that it was exempt from any such obligations. The City has made no such showing.
Plaintiff's claims are additionally bolstered by allegations that the City hired an accounting and auditing firm to assess the tax liability and "how to fix the problems Plaintiff is having," the accounting firm "reached the conclusion that the NYPD was at fault for the tax issues and is responsible for the tax burden, not Plaintiff," (id. ¶¶ 95, 104-105, 121) and that an NYPD supervisor, "Chief Hart," admitted to Plaintiff that "the tax burden was the responsibility of the NYPD and not Plaintiff" (id. ¶¶ 91). Plaintiff's uncontradicted allegation that the City or the NYPD paid foreign tax liabilities on behalf of officers in other foreign posts also raises [*10]questions of fact regarding what duties the City may have assumed with respect to foreign tax liabilities of NYPD officers employed as international liaisons (NSYCEF Doc No. 13, amended complaint ¶¶ 83-82, 96, 110-111, 116).[FN4]
Additionally, the NYPD's reference to Plaintiff's marital status in connection with its refusal to assist Plaintiff with the tax liability may give rise to a cause of action for marital status discrimination under the New York City Human Rights Law.[FN5]
 Therefore, the motion is denied as to the first cause of action.
The City also moves to dismiss Plaintiff's second cause of action for negligent infliction of emotional distress. To state a cause of action for negligent infliction of emotional distress, a plaintiff must plead that the defendant's breach of a duty owed to the plaintiff directly caused the plaintiff to experience emotional injury (Brown v New York Design Ctr., Inc., 215 AD3d 1, 8 [1st Dept 2023]). Neither extreme and outrageous conduct nor physical injury is required (id. at 8-9 ["We now clarify that a breach of a duty of care resulting directly in emotional harm is compensable even though no physical injury occurred"]). Plaintiff's amended complaint alleges that the City's negligent conduct caused him to suffer "emotional distress, including anxiety, loss of sleep, and a persistent sense of humiliation and professional instability that affected his overall well-being and daily functioning" (NYSCEF Doc No. 13, amended complaint ¶ 146). Plaintiff further alleges that emotional distress he suffered "includes but is not limited to humiliation, embarrassment, anxiety, depression and paranoia" (id. ¶ 147). Whereas Plaintiff has sufficiently pleaded a duty owed to him by the City and specific allegations regarding the alleged emotional injuries he suffered therefrom, the amended complaint states a cause of action for negligent infliction of emotional distress, and the motion is denied as to this cause of action.
This case presents a unique set of circumstances involving Plaintiff's thirteen-year employment by the NYPD as an international liaison, which raises complicated questions of international tax law. Plaintiff alleges in the complaint that the City refused to provide a copy of the audit prepared in connection with Plaintiff's employment, despite Plaintiff's requests for same, and Plaintiff would, as a matter of course, not be privy to information regarding the City's compliance with its own tax obligations in connection with his employment. Although Plaintiff's claims may be inartfully pled, Plaintiff must be afforded every favorable inference on this motion, and the amended complaint contains sufficient factual allegations to warrant denial of the motion to dismiss and entitle him to relevant discovery regarding his claims.
Nevertheless, the motion to dismiss is granted as to the third cause of action for breach of the implied covenant of good faith and fair dealing. "In New York, all contracts imply a [*11]covenant of good faith and fair dealing in the course of performance" (511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 NY2d 144, 153 [2002]). "This covenant embraces a pledge that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (id.). "While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included" (id.) [internal quotation and citation omitted]). "For a complaint to state a cause of action alleging breach of an implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff (Aventine Investment Management, Inc. v Canadian Imperial Bank of Commerce, 265 AD2d 513, 514 [2nd Dept 1999]).
The amended complaint states that the cause of action for breach of the implied covenant of good faith and fair dealing is based upon "a collective bargaining agreement as well as internal NYPD policies and long-standing practices" (NYSCEF Doc NO. 13, amended complaint ¶ 101). Plaintiff further pleads that the NYPD breached the implied covenant of good faith and fair dealing by frustrating Plaintiff's expectation "that NYPD liaisons would not be personally liable for foreign tax obligations incurred during official assignment abroad" (id. ¶ 102). This is insufficient to state a cause of action for breach of the implied covenant of good faith and fair dealing because it fails to identify which rights established by the collective bargaining agreement were impaired by the City's actions and how the City's actions evidence intent to prevent performance of the contract or to withhold its benefits from Plaintiff (see Stonebridge Cap., LLC v Nomura Intl PLC, 24 Misc 3d 1218 [A], *9, [Sup Ct, NY County 2009] affd, 68 AD3d 546 [1st Dept 2009] [cause of action dismissed where "the complaint does not offer any indication whatsoever of which rights [the] alleged breach of the covenant of good faith and fair dealing destroyed"]). A copy of the collective bargaining agreement is not attached to the amended complaint, nor has Plaintiff cited to any relevant provisions of the agreement in the complaint. The reference to "internal NYPD polices and long-standing practices" is also insufficient to state a cause of action for breach of the implied covenant of good faith and fair dealing. Therefore, the cause of action is dismissed.
C. Statute of Limitations
Finally, the City moves to dismiss on the grounds that all of Plaintiff's claims are time-barred. The City argues that Plaintiff's causes of action accrued when he first learned of the tax debt in 2018, and therefore the statute of limitations expired on March 30, 2020 or December 31, 2021. The Plaintiff opposes and asserts that his causes of action did not accrue in 2018 because they were not final or fully known at that time and because the NYPD did not definitively refuse to reimburse Plaintiff until March 2024. Plaintiff also argues that a separate timely claim accrued when his pension was garnished in 2024.
"On a motion to dismiss a cause of action pursuant to CPLR § 3211 (a)(5) on the ground that it is barred by the statute of limitations, a defendant bears the initial burden of establishing, prima facie, that the time in which to sue has expired (Benn v Benn, 82 AD3d 548, 548 [1st Dept 2011]). "In considering the motion, [the] court must take the allegations in the complaint as true and resolve all inferences in favor of the plaintiff" (id.). To satisfy their prima facie burden, the [*12]movant must establish when the cause of action accrued and that the time to file has expired (see Lebedev v Blavatnik, 144 AD3d 24, 28 [1st Dept 2016]). The burden then shifts to the plaintiff to set forth evidentiary facts sufficient to establish or raise a question of fact as to whether the cause of action is timely by showing, e.g., that the statute of limitations was tolled, or was otherwise inapplicable, or that the action was commenced within the applicable limitations period (see Kitty Jie Yuan v 2368 W. 12th St., LLC, 119 AD3d 674, 674 [2d Dept 2014]).
The statute of limitations for causes of action interposed against the City varies according to the nature of the claim. For tort claims, the statute of limitations is one year and ninety days from the date the cause of action accrues (General Municipal Law § 50-e [1][a]; 50-i [1]; CPLR § 217-a; Campbell v City of New York, 4 NY3d 200, 203 [1st Dept 2005]). Plaintiff commenced this action on January 10, 2025 (NYSCEF Doc No. 1, summons and complaint). Applying a one year and 90-day statute of limitations, only claims that accrued before October 12, 2023 would be timely. Tort claims accrue "when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint" (Kronos, Inc. v AVX Corp., 81 NY2d 90, 94 [1993]).
Plaintiff pleads that he first became aware of the tax liability at the end of 2018, and he paid $245,000 to the Canadian government for the debt in 2020 (NYSCEF Doc No. 13, amended complaint ¶¶ 45-51, 74-76). In April 2023, Plaintiff received a notice of an additional $250,000 owed to the Canadian government, and in March 2024, he received yet another notice that he owed an additional $245,000 (id. ¶ 79, 124). The NYPD engaged in discussions with Plaintiff regarding the debt beginning in July 2023, it retained PKF to perform an audit sometime in late 2023, which appears to have concluded sometime in early 2024, and sometime after March 2024, the NYPD informed Plaintiff "that they are not going to reimburse him for the $500,000 he has already paid, nor will they pay the more than $245,000 currently owed" (id. ¶¶ 86, 103, 121, 124, 126). In May 2024, the Canadian government began to garnish Plaintiff's pension (id. ¶ 18).
Plaintiff's tort claims did not accrue until, at the earliest, the Canadian government demanded payment of the tax debt, because Plaintiff did not sustain any injury prior to the demand for payment (see Kronos, 81 NY2d at 94 [injury sustained at the time of pecuniary loss]). Although Plaintiff was initially notified of the debt in 2018, he received demands for additional amounts owed in April 2023 and May 2025. When each claim accrued raises a question of fact that cannot be resolved on a motion to dismiss, but it is evident from the pleadings that at least some of Plaintiff's claims accrued well within the statute of limitations. Given the nature of Plaintiff's claims and lengthy timeline of events, there are likely other relevant facts that bear on this issue.
Moreover, Municipal Law § 50-e and 50-i are inapplicable to causes of action asserted under contract or quasi-contract theories of liability or the NYCHRL (Slemish Corp. S.A. v Morgenthau, 192 AD3d 465, 467 [1st Dept 2021] ["Accordingly, no notice of claim was required for the money had and received cause of action, which sounds in quasi-contract"]; Margerum v City of Buffalo, 24 NY3d 721, [2015] [no notice of claim requirement for claims asserted under the Human Rights Law]; Finke v City of Glen Cove, 55 AD3d 785, 786 2d Dept 2008]). To the extent that Plaintiff states a cause of action for equitable indemnification or may have claims arising under these theories of liability, a longer statute of limitations would apply [*13]and the claim may accrue at a different time.[FN6]
Notably, the statute of limitations for a cause of action for equitable indemnification would not accrue until Plaintiff paid the tax debt (see Chem. Bank v Stahl, 272 AD2d 1, 19 [1st Dept 2000] [indemnification claim accrues upon the plaintiff's own expenditure of costs]). Therefore, dismissal on this basis would be premature.
Accordingly, it is
ORDERED that Plaintiff's cross-motion for leave to amend the complaint herein is granted, and the amended complaint in the proposed form annexed to the moving papers shall be deemed served upon service of a copy of this order with notice of entry thereof; and it is further
ORDERED that the motion to dismiss is granted in part and to the extent that the third cause of action for breach of the implied covenant and good faith and fair dealing is dismissed; and it is further
ORDERED that the balance of the motion is denied; and it is further
ORDERED that defendant is directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry; and it is further
ORDERED that Plaintiff is directed to file and serve a Request for a Preliminary Conference within 10 days of service of entry of this order; and it is further
ORDERED that the clerk of the court is directed to schedule this matter for a settlement conference on October 28, 2025 at 2:15 p.m. at 80 Centre Street, Room 320, New York, New York.
This constitutes the order and decision of the court.
DATE 9/29/2025
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Except where otherwise noted, the facts are recited here as alleged in the amended complaint and are accepted as true for the purpose of the motion, as required on a motion to dismiss pursuant to CPLR § 3211 (a)(7).

Footnote 2:The Treaty is designed to relieve cross-border employees of double taxation and prevent fiscal evasion with respect to taxes on income and capital (Treaty, preamble). The Treaty is generally applicable to persons, including entities, who are residents of the United States and Canada, and sets forth provisions regarding which country has the right to collect income tax from cross-border employment, outlines provisions regarding tax deductions and withholding, and provides for certain limits and exemptions from taxation (id., Article I-II).

Footnote 3:Notably, a number of significant changes were enacted by the Canadian government in 2015 regarding tax on non-resident employees and employers, including the adoption of a process whereby non-resident employers may apply for a waiver from the obligation to withhold and remit tax where a treaty exemption applies (see "Withholding for non-resident employers," Canadian Revenue Agency, https://www.canada.ca/en/revenue-agency/programs/about-canada-revenue-agency-cra/federal-government-budgets/budget-2015-strong-leadership/withholding-non-resident-employers.html
[last accessed September 22, 2025]). Given that some of Plaintiff's claims span a period of time between 2011 and 2024, the applicable legal standard applicable to Plaintiff's claims may vary according to when the claim accrued.

Footnote 4:At oral argument, the City's counsel stated that he has "yet to figure out whether this tax arrangement was done," and "[t]here is a possibility that as a one-off anomalous situation the Singapore one might have actually occurred" (NYSCEF Doc No. 17, transcript at 6).

Footnote 5:To state a cause of action for employment discrimination under the New York City Human Rights Law, a plaintiff must allege that (1) they are a member of a protected class, (2) they were qualified for the position, (3) that they were subjected to an adverse employment action or were treated differently or worse than other employees, and (4) that the adverse or different treatment occurred under circumstances giving rise to an inference of discrimination (Spiegel v 226 Realty LLC, 231 AD3d 562, 565 [1st Dept 2024]; Harrington v City of New York, 157 AD3d 582, 584 [1st Dept 2018]). Marital status is a protected class (Administrative Code § 8-107 [1][a]).

Footnote 6:
 See discussion of sufficiency of pleading supra at 13.